William D. McMAHAN, William B. McMahan, Appellants (Defendants Below),

v.

SNAP ON TOOL CORPORATION, Appellee (Plaintiff Below).

No. 4–384A87.

Court of Appeals of Indiana, Fourth District.

May 22, 1985.

Carl L. Peters, William J. Hamilton, Peters & Carter, Indianapolis, for appellee.

MILLER, Presiding Judge.

Defendant-appellant William McMahan, a former dealer for plaintiff-appellee, Snap On Tool Corp. (Snap On), appeals the judgment of the Marion Municipal Court finding him liable to Snap On in the amount of $3853.21 for supplies furnished McMahan but not paid for. We hold that the trial court properly overruled McMahan's motion for summary judgment because McMahan failed to establish the lack of any genuine issue of material fact regarding his statute of limitations defense. We also hold there was no error in the admission at trial of two written agreements between McMahan and Snap On. Thus, the trial court is affirmed.

### FACTS

McMahan sold Snap On tools from November, 1969, to November, 1971, in a consignment arrangement whereby McMahan would order a stock of tools from Snap On, sell them to customers within his territory, pay Snap On the purchase price less a dealer discount, and collect the full purchase price from the purchasing customer. Periodically, Snap On would conduct an inventory of the tools in McMahan's possession (title to which remained with Snap On) to double check what McMahan had ordered and sold and how much he owed Snap On. Snap On also maintained an account in McMahan's name, which was debited when he ordered tools and credited when he made a payment.

The parties conducted business in this way for about fourteen months before any written agreement was executed by them. On January 11, 1971, McMahan signed a Dealer Agreement and a Consignment Agreement with Snap On. The Dealer Agreement stressed that McMahan was a dealer and not an agent or legal representative of Snap On for any purpose. Snap On agreed to sell its merchandise to McMahan at the prevailing price and "to take all acceptable open account charges against

Philip R. Correll, Indianapolis, for appellant.

[McMahan's] customers, assigned with recourse, in lieu of cash, subject to collection of such accounts. All accounts delinquent sixty days or more will be charged back to [McMahan]." (R. 131) The Dealer Agreement also recited that it embodied all the promises of the parties and superseded all previous agreements between them.

The Consignment Agreement between the parties provided that Snap On would deliver, and McMahan would accept, goods ordered by McMahan; that title to and control of the goods remained with Snap On until sold by McMahan to a customer; that McMahan was responsible for disappearance of goods in his custody and would permit Snap On to make inventories of his consigned goods; and that "[a]ll merchandise sold from consigned stock shall be paid for in full each week, less applicable discounts, and a detailed report of sales so made from consigned merchandise shall be submitted to [Snap On]." (R. 133.) The Consignment Agreement was made terminable by either party at any time with notice.

Following the execution of these agreements, McMahan and Snap On continued to do business as they had before. In November, 1971, McMahan notified his field manager that he wanted to terminate his relationship with Snap On. He returned the tools he still had in his possession, and, together with his field manager, inventoried the tools. At that time, it appears the balance of McMahan's account with Snap On was over $5,500. (R. 42.) The balance due continued to fluctuate until July 21, 1973, when Snap On sent its last statement to McMahan, which showed a credit to him of $49.37. McMahan's account was inactive after that date, with no further charges or credits being made.

Snap On filed this suit in the Hamilton Superior Court on September 17, 1979, claiming McMahan owed it $4,653.01 on the account maintained in his name. Following a change of venue to the Marion Municipal Court, McMahan filed a motion for summary judgment on September 10, 1980, contending that Snap On's action was barred by the six-year statute of limitations for actions on accounts. *See* IND.CODE § 34–1–2–1 (1982). Attached to McMahan's motion was his affidavit, which essentially stated in conclusory terms that Snap On's action was not commenced within six years after it accrued. (R. 10) Snap On did not respond directly to McMahan's motion for summary judgment, but did file interrogatories, a motion to produce and requests for admissions, to which McMahan responded.

On November 2, 1983, after a change of venue from the judge, the trial court heard evidence and arguments on McMahan's motion for summary judgment. McMahan was questioned by his attorney concerning his working relationship with Snap On and how the consignment arrangement worked, Snap On's attorney cross-examined McMahan and had him authenticate the Dealer Agreement and Consignment Agreement he entered with Snap On. When Snap On offered these documents into evidence, McMahan's attorney objected on the ground that they were irrelevant to a suit on account. The trial court neither admitted nor refused to admit the agreements, but rather, after some discussion, stated:

"Gentlemen, my impression would be that as of this minute possibly the easiest thing to do is to show the Defendant's Motion for a Summary Judgment overruled, and if you feel at a subsequent time in the proceedings, Mr. Correll [McMahan's attorney], because this is always a good defense, the statute of limitations, uh, and it has been raised, I suppose, technically at least by the Summary Judgment if not by the pleadings, that if you feel it is appropriate at some time during the course of the trial to make the appropriate motions in that area, I think we can dispose of it at that time if we have to, but I think we're really running over a lot of ground that we probably are going to cover anyway on the case in chief."

(R. 123.)

The trial was held immediately following the trial court's denial of McMahan's mo-

tion for summary judgment. The Dealer Agreement and Consignment Agreement between McMahan and Snap On were introduced and admitted into evidence during the testimony of Snap On's only witness, Darrell Smith. McMahan's relevancy objection was overruled. Smith was coordinator of the administrative and accounting functions of the branch of Snap On Tools Corp. with which McMahan was associated. Smith testified about the consignment arrangements Snap On has with its dealers and about the termination of and attempts to collect on McMahan's account. McMahan testified on his own behalf and called no other witness.

At the close of all the evidence, McMahan's attorney stated that he was renewing his motion for summary judgment on the grounds of the six-year statute of limitations for actions on accounts. The trial court took all issues under advisement and, on November 14, 1983, ruled as follows:

"This cause, having been taken under advisement, comes now the Court and finds that there is a genuine issue as to a material fact and therefore overrules the Defendant's motion for a Summary Judgment, and further finds judgment for the Plaintiff on its complaint and against the Defendant in the sum of $3853.21 plus costs."

(R. 89.) McMahan's motion to correct error was overruled, and he now brings the present appeal, raising the following issues for review:

I. Whether the trial court erred in overruling McMahan's motion for summary judgment?

II. Whether the trial court erred in admitting the Dealer Agreement and Consignment Agreement into evidence at trial?

III. Whether the trial court erred in overruling McMahan's renewed motion for summary judgment raised orally at the conclusion of the trial?

We shall consider Issues I and III together. Finding no reversible error in any of McMahan's allegations of error, we affirm.

## I and III

■ McMahan alleges the trial court erred in overruling his motion for summary judgment at the conclusion of the hearing held immediately before trial. He also alleges error in the denial of his renewed motion for summary judgment raised orally at the conclusion of the trial. We discuss these two allegations together because we find we must consider McMahan's renewed motion for summary judgment as a request that the trial court reconsider its denial of his motion for summary judgment before the trial.[1]

---

1. We must treat McMahan's renewed oral motion for summary judgment as a request that the trial court reconsider its denial of his pre-trial motion for summary judgment for two reasons. First, it is clear that a motion for summary judgment after all the evidence has been presented at trial is inappropriate. Trial Rule 56(C) requires that a motion for summary judgment be "served" (implying a written motion) at least ten days before the time fixed for the hearing thereon. This requirement could not be met by an oral motion made at the conclusion of a trial on the merits of the case. In addition, we have stated that "the function of the summary judgment device is to limit the issues for trial by foreshadowing the proof that will be adduced at trial and weeding out those issues on which there is no question of fact ...." *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 135. An oral motion for summary judgment after the trial is concluded, therefore, could not be consistent with the function of the summary judgment device.

Second, we are unable to construe McMahan's motion at the conclusion of the trial as any sort of motion for judgment on the merits of this case that is provided for in our Trial Rules. This being a bench trial, McMahan could not have moved for judgment on the evidence under Trial Rule 50, which is limited to issues in a case tried to a jury or an advisory jury. *See* T.R. 50(A); *United Farm Bureau Mutual Insurance Co. v. Wampler* (1980), Ind.App., 406 N.E.2d 1195. In addition, because McMahan did not make his renewed motion for summary judgment until *after all the evidence* had been presented at trial, it cannot be construed as a motion for involuntary dismissal, which must be raised at the completion of the presentation of evidence by the party having the burden of proof on the issue on which involuntary dismissal is sought. *See* T.R. 41(B).

Thus, we must treat McMahan's renewed motion for summary judgment raised orally at the completion of the trial in this case as a request that the trial court reconsider its denial of his

In reviewing the trial court's decision on a summary judgment motion, this court applies essentially the same standard the trial court must apply in deciding whether to grant or deny summary judgment in the first instance—we must look to the pleadings, depositions, answers to interrogatories, admissions, affidavits and testimony, if any, to determine, first, whether there is any issue of material fact, and second, whether the moving party is entitled to judgment as a matter of law. T.R. 56(C); *Barnes v. Wilson* (1983), Ind.App., 450 N.E.2d 1030. While it is true that the opponent of a summary judgment motion risks judgment against him if he rests on his pleadings in the face of a motion supported by materials contemplated by Trial Rule 56(C), it is also true that the trial court should not enter judgment in such a case as a matter of course, but should examine the pleadings, depositions, etc. available to it and apply the summary judgment standard supplied by Trial Rule 56(C). *See* T.R. 56(C); *Means v. Indiana Financial Corp.* (1981), Ind.App., 416 N.E.2d 896. In reviewing the trial court's decision on a summary judgment motion, facts alleged by the opponent of the motion must be taken as true, and the evidentiary items contemplated by Trial Rule 56(C) must be construed in favor of the opponent. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630.

■ Furthermore, the party who moves for summary judgment bears the burden of establishing that there is no genuine issue of material fact to prevent the grant of summary judgment, and all doubts and reasonable inferences regarding the existence of such an issue are to be resolved in favor of the opponent to the motion. *Wallace v. Indiana Insurance Co.* (1981), Ind.App., 428 N.E.2d 1361. In *Conard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, we reversed the trial court's denial of a summary judgment motion, based on a statute of limitations defense, filed by the defendant in a medical malpractice action. In *Conard*, we stated:

"[I]n a summary judgment proceeding, when the moving party asserts—as did Dr. Conard in the case before us—the affirmative defense of the statute of limitations and presumptively establishes that defense by placing before the trial court Trial Rule 56(C) materials showing there is no question that the action against him was initiated beyond the limited statutory period, then the burden of establishing the existence of material facts *in avoidance* of the statute of limitations defense shifts to the opponent of the summary judgment motion. [Footnote omitted.] *Whitehouse v. Quinn* (1982), Ind.App., 443 N.E.2d 332, [vacated on other grounds]; *see Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221."

474 N.E.2d at 134 (emphasis supplied). Thus, the party relying on the statute of limitations defense for his summary judgment motion, bears the initial burden of presumptively establishing that defense by placing before the trial court Trial Rule 56(C) materials that demonstrate: (1) the nature of the plaintiff's action, so that the relevant statute of limitations period may be identified; (2) the date the plaintiff's cause of action accrued; and (3) the date the cause of action was brought, being beyond the relevant statutory period. Only when the moving party demonstrates these matters properly does the burden shift to the opponent of the summary judgment motion to establish facts in avoidance of the statute of limitations defense. *See Conard v. Waugh, supra.*

■ In the present case, we have carefully reviewed all the Trial Rule 56(C) materials available in the record—the complaint, McMahan's answers to interrogatories and responses to requests for admis-

---

pre-trial motion for summary judgment. We must also treat that portion of the trial court's entry of judgment that stated that "there is a genuine issue as to a material fact and therefore [the Court] overrules the Defendant's motion for Summary Judgment," (R. 89.), as the result of the trial court's reconsideration of its denial of McMahan's summary judgment motion. Therefore, it appears the trial court denied McMahan's motion because of the existence of a genuine issue of material fact, rendering summary judgment improper. *See* T.R. 56(C).

sions, as well as his affidavits and testimony at the hearing on the motion for summary judgment—and we must conclude that McMahan has failed to carry his initial burden of presumptively establishing his statute of limitations defense in the manner described above. Therefore we must affirm the trial court's denial of McMahan's summary judgment motion.

■ Regarding the three elements of proof logically necessary to presumptively establish the statute of limitations defense, we may assume, though we do not decide, that Snap On's action was one on an open account, as stated in the complaint, subject to the six-year statute of limitations [2] found

at Indiana Code section 34–1–2–1 (1982). From the face of Snap On's complaint, it appears that this cause of action was filed on September 17, 1979, which is the date file-stamped on the complaint. The question is, then, whether there is any Trial Rule 56(C) evidence in the record to establish that Snap On's cause of action accrued more than six years before September 17, 1979.

■ McMahan contends that the cause of action, if any, on his open account with Snap On accrued on the date he last purchased merchandise from Snap On, or, at the latest, on the date of the last item proved in the account.[3] Assuming this to

2. The primary issue debated by the parties at the hearing on McMahan's motion for summary judgment was whether this lawsuit was an action on account, subject to the six-year statute of limitation found at IC 34–1–2–1 (1982), or an action on the written Dealer Agreement and Consignment Agreement, subject to the ten-year statute of limitation for an action on a written contract for the payment of money under IC 34–1–2–2(5). In fact, the issue of whether the relationship between McMahan and Snap On was governed by the two written agreements, thus placing the cause of action within the ten-year limitation period, seems to have been the existing factual issue on which the trial court based its denial of summary judgment. The trial court's judgment on the merits in Snap On's favor indicates the court resolved this issue against McMahan's argument for a six-year statute of limitation.

For two reasons we need not address the correctness of the trial court's apparent determination that this case is subject to the ten-year statute of limitation for actions on written contracts for payment of money. First, even assuming the six-year statute applies, the trial court's denial of McMahan's motion for summary judgment is sustainable on the existence of another genuine issue of material fact—i.e. the date on which Snap On's cause of action accrued. The rule that this court may affirm the grant of summary judgment on a theory other than that on which the grant was rendered—see Havert v. Caldwell (1983), Ind., 452 N.E.2d 154; Celina Mutual Insurance Co. v. Forister (1982), Ind.App., 438 N.E.2d 1007—should be equally applicable to the situation where the trial court has denied summary judgment, since the consequences of an erroneous denial (continuation of the litigation of the issue in question toward trial on the merits) are less damaging than the consequences of an erroneous grant of summary judgment (termination of the litigation of the issue).

Second, we need not address the correctness of the trial court's apparent determination that this cause of action is within the ten-year limitation of IC 34–1–2–2(5) because McMahan does not allege on appeal that the judgment of the trial court was contrary to law. McMahan challenges only the denial of his motion for summary judgment, and so our task is to examine the facts established by the pleadings, depositions, etc., and to determine whether there is a genuine issue of material fact and whether McMahan was entitled to judgment as a matter of law. T.R. 56(C); Barnes v. Wilson (1983), Ind.App., 450 N.E.2d 1030. This standard of review does not permit us—and McMahan, by failing to allege the trial court's judgment was contrary to law, does not call upon us—to examine all the evidence presented at trial to determine whether this cause of action was one on account, subject to a six-year limitation period, or one on a written contract for payment of money, subject to the ten-year period.

3. Assuming, as we have, an action on account in this case, we note the provisions of IC 34–1–2–4 (1982): "In an action brought to recover a balance due upon a mutual, open and current account between the parties, the cause of action shall be deemed to have accrued from the date of the last item proved in the account on either side." A mutual account is one that shows a "reciprocity of dealing between the parties ... [and] the items on the different sides of the account must be capable of being set off against each other ...." 54 C.J.S. Limitations of Actions § 165 (1948) (footnotes omitted). "An open account is one in which some item of contract is not settled by the parties, or where there have been running or current dealings between the parties and the account is kept open with the expectation of further dealings." 1 C.J.S. Account at 574 (1936). A current account is one consisting of different items from

be true, the question remains whether either of these dates is established by "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony," as required by Trial Rule 56(C).

The only such evidence submitted by either party that purports to establish when Snap On's cause of action accrued is McMahan's affidavit in support of his motion for summary judgment,[4] which in relevant part alleges:

"4. That this action was commenced by the service of a summons and complaint on defendant on April 24, 1980.

5. That plaintiff's cause of action accrued on July 21, 1972.

6. That this action was not commenced within six years after the action accrued, and is barred by I.C. 34–1–2–1."

(R. 10.) Trial Rule 56(E) states: "Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the

matters stated therein." T.R. 56(E) (emphasis added); *Indiana University Hospitals v. Carter* (1983), Ind.App., 456 N.E.2d 1051. A statement in an affidavit in support of a motion for summary judgment that is no more than an opinion or a conclusion of law, however, is not sufficient to establish the facts necessary to show that no genuine factual issue exists that would preclude summary judgment. *See Indiana University Hospitals, supra.* The above-quoted portions of McMahan's affidavit state no *facts* within his personal knowledge to which he would be competent to testify to establish when Snap On's cause of action accrued; rather, the affidavit merely states the legal conclusion that the cause of action accrued on July 21, 1972. This statement is insufficient to establish that Snap On's cause of action accrued more than .six years before September 17, 1979, *see Indiana University Hospitals, supra.* Thus, McMahan has failed to carry his burden of presumptively establishing his statute of limitations defense, and the burden of establishing facts in avoidance of the defense never shifted to Snap On. *See*

---

different dates that is not closed by settlement or otherwise. The statute of limitations for an action on account otherwise begins to run at the time the cause of action becomes "vested and enforceable," 54 C.J.S. *Limitations of Actions* § 163 (1948), which could mean the last date on which McMahan purchased merchandise from Snap On. It is not necessary to our decision of this case, however, that we determine whether this is a "mutual, open and current account" subject to IC 34–1–2–4, and, thus, we decline to do so.

4. None of the other Trial Rule 56(C) evidence that appears in the record establishes when Snap On's cause of action accrued. The complaint is the only pleading in the record, and it merely states the amount past due and owing to Snap On and McMahan's failure and refusal to pay that amount. (R. 1) In an answer to an interrogatory, McMahan stated that his open account with Snap On was terminated in November, 1971, (R. 21) but this date is unrelated to the time when the cause of action accrued. *See supra,* n. 3. Documents attached to the answers to interrogatories were neither sworn statements nor certified exhibits (R. 24–27) and, therefore, were not qualified for consideration. *See Freson v. Combs* (1982), Ind.App., 433 N.E.2d 55. In response to Snap On's first request for admissions, (R. 57), McMahan denied

the geniuneness of ten business records submitted by Snap On, which therefore establish nothing. In response to Snap On's second request for admissions, (R. 62), McMahan admitted he sent a letter to H.J. Keefner of Snap On Tools Corp. on or about October 17, 1973; the contents of this letter are unknown to us, however, because it does not appear in the record. In an affidavit filed in opposition to a motion for summary judgment filed by Snap On (which motion Snap On later withdrew), McMahan alleged: "That he had substantial losses in connection with the alleged unpaid account not reflected in the 'Account Itemization' attached to the complaint." (R. 13) Perhaps the "Account Itemization" reflects the last date McMahan purchased merchandise from Snap On or "the last item proved in the account on either side," IC 34–1–2–4 (1982), but it does not appear in the record with the complaint or, as far as we are able to determine, anywhere else. Finally, McMahan's testimony at the hearing on the motion for summary judgment described his working relationship with the branch managers at Snap On and stated the date of termination of that relationship, but, as noted, that does not establish the date Snap On's cause of action accrued. *See supra,* n. 3. Thus, none of the Trial Rule 56(C) evidence in the record establishes the date of accrual of Snap On's cause of action.

*Conard v. Waugh, supra.* Therefore, based on the Trial Rule 56(C) evidence available to the trial court, summary judgment for McMahan was not appropriate even though Snap On did not directly respond to McMahan's motion for summary judgment, and the trial court did not err in overruling that motion. *See* T.R. 56(C); *Means v. Indiana Financial Corp., supra; Wallace v. Indiana Insurance Co., supra.* The trial court's entry of judgment correctly reflects the existence of a genuine issue of material fact—i.e. the date on which Snap On's cause of action accrued—precluding summary judgment under Trial Rule 56(C). *See supra*, n. 2.

Because the trial court did not err in overruling McMahan's pre-trial motion for summary judgment, it follows logically that it did not err in denying McMahan's renewed, oral motion for summary judgment raised at the end of the trial, which motion, as we have explained, we have treated as a request that the trial court reconsider its denial of McMahan's original motion for summary judgment. We conclude, therefore, that McMahan has presented no reversible error in Issues I and III.

## II.

McMahan also alleges the trial court erred in admitting into evidence the Dealer Agreement and Consignment Agreement signed by McMahan and an agent of Snap On. McMahan objected to the admission of these documents at trial and in his motion to correct error on the ground that they were not relevant to the issues in an action on account. McMahan apparently believed Snap On's sole purpose in introducing the written agreements was to remove the case from the six-year statute of limitation for an action on account, *see* IND.CODE § 34-1-2-1 (1982), and place it within the ten-year statute for an action on a written contract for the payment of money, *see id.* § 34-1-2-2(5).

The trial court is granted broad discretion in the admission or exclusion of evidence, and this is nowhere more true than in a bench trial where evidence is challenged on the ground of relevancy. *See State v. Hall* (1982), Ind., 432 N.E.2d 679 (question of relevance is for discretion of trial judge); *Clouse v. Fiedler* (1982), Ind.App., 431 N.E.2d 148 (trial court has discretion to admit or reject evidence); *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286 (trial judge presumed to base his decision on consideration of competent evidence only). When evidence is relevant, it should be admitted regardless of its weight. *Indiana State Highway Commission v. Vanderbur* (1982), Ind.App., 432 N.E.2d 418. Evidence is relevant when it logically tends to prove a material fact, *State v. Hall, supra; Masson Cheese Corp. v. Valley Lea Dairies, Inc.* (1980), Ind.App., 411 N.E.2d 716, and a fact is material if it is logically related to an issue in a lawsuit, *Azimow's Estate v. Azimow* (1967), 141 Ind.App. 529, 230 N.E.2d 450.

The Consignment Agreement and Dealer Agreement were relevant as tending to prove whether this lawsuit was based on an account or on a written contract for the payment of money, which was the major issue in this litigation. Therefore, the trial court was not in error in admitting the documents. McMahan seems to presume that once the agreements were admitted, his argument was doomed that the action was on account and barred by the six-year statute of limitation in Indiana Code section 34-1-2-1. This is not true, because, as this court has stated: "The mere existence of any written document associated with a cause of action does not enable a claimant to avoid a shorter statute of limitations for unwritten contracts [and actions on account]. The written document must in fact be the basis for the claim being pressed." *In re Widau* (1978), 177 Ind.App. 215, 222, 378 N.E.2d 936, 940. Without admitting the written agreements into evidence, the trial court could not have judged the merits of Snap On's claim that this lawsuit was actually based on those agreements and so within the ten-year statute of limitations at Indiana Code section 34-1-2-2(5). The admission of these doc-

uments did not, however, automatically bring this case under the ten-year statute. *In re Widau, supra.*

As we have noted, *supra*, n. 2, we have no occasion to determine whether the trial court actually decided this case was within the ten-year statute and, if so, whether that decision was correct. In his motion to correct error and his argument on appeal, McMahan alleges error only in the trial court's denial of his motion for summary judgment and post-trial renewal thereof, and in the admission of the Dealer Agreement and Consignment Agreement; he does not allege the trial court's judgment was contrary to law. We decide only that the Trial Rule 56(C) evidence in the record does not clearly show that there was no question that Snap On's action was initiated against McMahan beyond the relevant statute of limitations period, and that the Dealer Agreement and Consignment Agreement were admissible as relevant to the issue of whether this cause of action was one on account or one on a written contract. McMahan alleges no other error.

Affirmed.

CONOVER and YOUNG, JJ., concur.