**Robert A. MILLER, Appellant–Plaintiff,**

**v.**

**MONSANTO COMPANY,
Appellee–Defendant.**

**No. 28A04–9304–CV–155.**

Court of Appeals of Indiana,
First District.

Dec. 27, 1993.

■■■■■■■■■■■■■■■■■■■■■■■■■■■

David S. McCrea, McCrea & McCrea, Bloomington, for appellant-plaintiff.

Michael R. Fruewald, Michael Rosiello, Barnes & Thornburg, Indianapolis, for appellee-defendant.

NAJAM, Judge.

## STATEMENT OF THE CASE

Robert A. Miller appeals from the trial court's order granting summary judgment in favor of Monsanto Company. Miller alleges that he suffered physical injury and emotional distress caused by Monsanto's negligence and willful misconduct in the testing of and warnings given with a Monsanto product, which contained polychlorinated biphenyls ("PCB's"). Monsanto maintains that Miller failed to demonstrate a genuine issue of material fact concerning (1) whether PCB's were absorbed into Miller's body and (2) whether PCB's caused Miller's injuries.

We affirm.[1]

## ISSUE

The issue presented for review is whether Miller produced sufficient evidence to demonstrate a genuine issue of material fact and preclude summary judgment.

## FACTS

In 1969 or 1970, Miller contracted with Bloomfield Silo Company to construct a concrete stave silo on a farm Miller owned and operated in Greene County, Indiana. The silo was completed in April of 1970. The interior of the silo was coated with a sealant known as "cumar," which is now known to contain PCB's. During the period from 1970 to 1981, Miller used the silo to store silage. During the filling process in the fall of each year, Miller entered and remained inside the silo for a number of hours at a time over a period of 7 to 10 days. Miller also entered the silo in the winter and spring months of those years when silage was removed to feed his cattle. Miller testified that he smelled a "serious, sickening, deathly type odor" each time he entered the silo during the filling process.

While in the cumar-coated silo, Miller stood on the silage and pushed it around with a pitchfork to maintain even distribution and packing as the silo filled. Miller testified that he became ill during and after the periods in which he was inside the cumar-coated silo and, in particular, experienced nausea and vomiting, dryness in the lungs, headaches, and general dehydration. When Miller entered the silo in the winter and spring months he also experienced the dryness and queasiness, although to a lesser degree than during the fall months. In addition, Miller complained that he has suffered a variety of other symptoms since 1970, which he now attributes to PCB exposure, including irritation in his throat and lungs, burning, irritation and discharge in his eyes, fatigue, shortness of breath, leg cramps, sore joints, and sleeping difficulties. Miller stopped using the cumar-coated silo in 1982. He also testified that he did not smell the same odor or experience any symptoms in another silo constructed on his farm in 1974, which did not contain PCB's in the interior coating.

This action was commenced on March 13, 1987. Miller's complaint originally included claims against Monsanto and Bloomfield Silo Company, the manufacturer and builder of Miller's silo. The trial court granted summary judgment for Bloomfield Silo Company on March 21, 1990. Miller's claims against Monsanto were based on breach of warranty and fraud, as well as negligence and willful misconduct in the testing of and warnings given with Monsanto's product, which are at issue here. On November 16 and 20, 1989, respectively, the trial court granted summary judgment for Monsanto on the breach of warranty and fraud claims.

On July 17, 1992, Monsanto filed a motion for summary judgment on the negligence and willful misconduct claims. A

1. We heard oral argument on November 30, 1993, in Indianapolis.

hearing was held on October 26, 1992. Thereafter, on January 4, 1993, the trial court granted Monsanto's motion. Miller appeals. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Lucas v. Stavos* (1993), Ind. App., 609 N.E.2d 1114, 1116, *trans. denied.* The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313. When the movant has established a prima facie lack of any genuine issue of material fact, it is incumbent upon the non-movant to respond by affidavit or other appropriate evidence setting forth specific facts establishing the existence of a genuine issue in dispute. *Keesling v. Baker & Daniels* (1991), Ind. App., 571 N.E.2d 562, 566, *trans. denied.* If the non-movant fails to meet this burden, then summary judgment in favor of the moving party is appropriate. *Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378, 1381, *trans. denied.*

When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. On appeal, only those portions of the record which were specifically designated to the trial court comprise the record for review.[2] *Inland Steel*, 608 N.E.2d at 1381.

Miller's complaint against Monsanto sounds in negligence. A negligence action is rarely an appropriate case for disposal by summary judgment. *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151, 152. Even if the trial court does not believe that the non-moving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *Haase v. Brousseau* (1987), Ind.App., 514 N.E.2d 1291, 1292. However, a plaintiff can recover for negligence only if he establishes that the defendant breached a duty owed to the plaintiff which was the proximate cause of the plaintiff's injuries. *Barsz*, 600 N.E.2d at 152. Absent factual evidence designated to the trial court, negligence will not be inferred. *Hale v. Community Hospital of Indianapolis, Inc.* (1991), Ind.App., 567 N.E.2d 842, 843. All of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts. *Midwest Commerce Banking Co. v. Livings* (1993), Ind. App., 608 N.E.2d 1010, 1012.

### Designation of Evidence

Monsanto contends that Miller improperly relies on materials outside of the designated evidentiary matter to advance his position. In support of its motion for summary judgment, Monsanto designated specific portions of depositions, interrogatory answers, pleadings and an affidavit. In response, Miller did not designate any specific facts or evidence but rather submitted the affidavits of Dr. William Powers and Dr. Janette Sherman, without any explanation as to their purpose. The record is devoid of an indication that Miller filed

---

**2.** We note that the trial court entered findings with its summary judgment. Generally, we will reverse the trial court's judgment only if its findings are clearly erroneous. *Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189, 192, *trans. denied.* However, findings of fact are not required in summary judgment proceedings, although a statement by the trial court as to its reasons for entering summary judgment is helpful on review because it affords the appellant an opportunity to address the merits of the trial court's reasoning. *Celina Mutual Insurance Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007, 1012. Thus, because we apply the same standard as the trial court in reviewing a grant of summary judgment, we are not bound by the trial court's findings. *Keskin v. Munster Medical Research Foundation* (1991), Ind.App., 580 N.E.2d 354, 362.

anything else in opposition to Monsanto's motion for summary judgment, although he was granted two extensions of time to do so.

Trial Rule 56(C), as amended in 1991, requires that each party "designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and *any other matters on which it relies for purposes of the motion.*" (emphasis added). In addition, the non-movant must designate to the trial court "each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto." Ind.Trial Rule 56(C). Summary judgment must be entered if the *"designated evidentiary matter* shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (emphasis added).

Under Trial Rule 56(C), "both the trial court and the appellate court cannot look beyond whatever evidence has been designated." *Midwest Commerce Banking Company,* 608 N.E.2d at 1012; *see also Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101–02. Our supreme court has reaffirmed the strict nature of appellate review under Trial Rule 56 in *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431. In *Rosi,* Chief Justice Shepard wrote:

"No longer can parties rely without specificity on the entire assembled record—depositions, answers to interrogatories, and admissions—to fend off or support motions for summary judgment. It is not within a trial court's duties to search the record to construct a claim or defense for a party.

\* \* \* \* \* \*

Our 1991 amendments also prohibit appellate courts from reversing summary judgment orders on the ground that there is a genuine issue of material fact unless the material facts and relevant evidence were *specifically designated* to the trial court. T.R. 56(H). In applying this new standard of review, Judge Miller has observed that 'T.R. 56(H) was

specifically added to further impress upon us, as the reviewing court, the need for the parties to strictly comply' with the designated evidentiary matter requirement of amended T.R. 56(C)." (citation omitted)

*Id.* 615 N.E.2d at 434 (emphasis in original).

Thus, by not filing a designation under Trial Rule 56(C), Miller has failed to properly designate facts and evidence to show a genuine issue of material fact. However, Miller filed the affidavits of Dr. Powers and Dr. Sherman, with the trial court, and the court reviewed both before granting Monsanto's motion. Miller has since withdrawn Dr. Sherman's affidavit and, thus, only Dr. Powers' affidavit remains for purposes of our review. Assuming for the purpose of this opinion that Miller met the strict requirements of Trial Rule 56(C) merely by filing Dr. Powers' affidavit, we must then determine whether the affidavit is sufficient to overcome Monsanto's motion for summary judgment.

### Dr. Powers' Affidavit

Miller contends that Dr. Powers' affidavit presents competent and admissible expert testimony which creates a genuine issue of fact concerning the proximate cause of his acute health conditions. The record before us shows that the trial court reviewed Dr. Powers' affidavit, found that Miller had not presented admissible expert testimony and, thus, determined that Miller had not met his burden of proof. The court stated in its order granting summary judgment that, "Miller has failed to provide any ... admissible expert opinion that any ailment was caused by PCB's." Record at 352. Upon reviewing Dr. Powers' affidavit, we agree with the trial court's conclusion.

 Affidavits in support of or in opposition to a motion for summary judgment are governed by Trial Rule 56(E). Trial Rule 56(E) requires that *"supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stat-*

*ed therein."* (emphasis added). *See also Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 352, *trans. denied.* In addition, Trial Rule 56(E) requires that "[S]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." The requirements of Trial Rule 56(E) are mandatory. *Interstate Auction Inc. v. Central Nat'l Ins. Co.* (1983), Ind. App., 448 N.E.2d 1094, 1101. Where the affidavit does not meet the requirements of Trial Rule 56(E), the court may *disregard* it upon its own motion. *Lee,* 529 N.E.2d at 352 (emphasis added). A court should disregard any inadmissible information contained in an affidavit. *Id.; McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116, 122 n. 4.

 According to his deposition testimony, Dr. Powers, a family physician in Lyons, Indiana, has seen Miller three times in his professional capacity as Miller's physician. The first and only time at which Miller was *examined* by Dr. Powers occurred on May 19, 1987. Prior to that date, Miller had never been a patient of Dr. Powers. Dr. Powers testified that, on the basis of Miller's examination and tests conducted May 19, 1987, he had concluded that no further treatment of Miller was necessary. In fact, Dr. Powers considered Miller healthy for his age except for a loss of hearing. On February 5, 1988, Miller visited Dr. Powers for the second time and requested that he assist Miller in filling out some "papers for PCB's" that were prepared by Miller's counsel. Record at 105 (Deposition of Dr. Powers at 18). Dr. Powers simply acted as Miller's clerk by marking Miller's answers on a History of Health Symptoms or Conditions checklist related to PCB exposure. Finally, on April 10, 1989, Miller requested that Dr. Powers write a letter connecting Miller's condition to PCB's, and Dr. Powers obliged. The letter, dated April 12, 1989, states, "[T]he many problems, symptoms, and illnesses of Robert Miller are probably related to PCB exposure." *Id.* at 41. However, Dr. Powers explained in his deposition that, "[T]his letter is not saying that the man has cancer because of PCB's. It's the letter saying

that this whole mess has had a deleterious effect on his health." *Id.* at 36.

Dr. Powers did not conclude in his deposition testimony that Miller's acute health symptoms were caused by PCB exposure; rather, he surmised that Miller's conditions were a result of stress and anxiety over the "whole mess." *Id.* Dr. Powers accepted as true Miller's allegation of acute health problems although he had not been Miller's physician at any time during his alleged exposure to PCB's between 1970 and 1982. Yet, Dr. Powers did not attribute any of Miller's conditions to his exposure to PCB's. Dr. Powers testified in his deposition that he had no experience treating persons with PCB exposure and that he had no knowledge of the medical literature on PCB's other than a single article. Further, Dr. Powers admitted he was not an expert on the acute effects of PCB's when he stated, "[N]ow, the short-term effects, I can't argue with that, I'm not an expert on what happens when people walk around breathing and touching [PCB's] and whatever." *Id.* at 75–76.

However, Dr. Powers subsequently signed an affidavit which states, "[I]t is my opinion that Robert Miller suffered acute health problems as a result of his multiple exposures to PCB's in the silo coated with Cumar [the sealant containing PCB's]." Record at 109 (Affidavit of Dr. Powers at 2). Dr. Powers then struck-out a portion of the affidavit which concluded that Miller had suffered "chronic health effects from PCB exposure." *Id.* Therefore, the affidavit was submitted solely for Dr. Powers' opinion on the acute or short-term effects of PCB's, a subject about which he admittedly had no expertise, and which directly contradicts his prior deposition testimony regarding the cause of Miller's health conditions.

We have held that "a non-movant may not create issues of fact by pointing to affidavit testimony which contradicts the witnesses sworn testimony in a prior deposition." *Keesling,* 571 N.E.2d at 568 (quoting *Gaboury,* 446 N.E.2d at 1313). In *Gaboury,* our supreme court stated:

"[W]e do not feel that issues of fact should be created in this manner and thus hold that 'contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant.'"

*Gaboury,* 446 N.E.2d at 1313 (citing *Wachovia Mtg. Co. v. Autry–Barker–Spurrier Real Estate, Inc.* (1978), 39 N.C.App. 1, 249 S.E.2d 727, 732). Similarly, Dr. Powers' affidavit fails to offer a sufficient explanation for his contradictory opinion.

Dr. Powers' affidavit was based on a number of documents referenced in and attached to his affidavit.[3] With the exception of one item, Dr. Powers' affidavit is based upon information that was within his knowledge, and about which he testified, during his deposition on August 29, 1991. The Material Safety Data Sheet is the only supporting material upon which Dr. Powers based his contradictory affidavit opinion that Miller's acute health conditions resulted from exposure to PCB's. Miller alleges that the Material Safety Data Sheet is an internal Monsanto document prepared in 1971. With regard to this document, Dr. Powers' affidavit states the following in rhetorical paragraph number seven:

"I have reviewed a Material Safety Data Sheet of Monsanto for PCB's which indicates that systemic intoxication by PCB's leads to nausea, vomiting, loss of weight, edema and abdominal pain. (See Exhibit H). In the history which I took of Robert Miller, he complained of nausea, vomiting, and frequent abdominal pain when exposed to the PCB's in the silo coated with Cumar."

Record at 109 (Affidavit of Dr. Powers at 1–2).

The Material Safety Data Sheet identifies the purported acute or short-term effects of PCB exposure. However, Dr. Powers

testified in his deposition that he was not an expert on the short-term effects of PCB exposure and, thus, he could not have verified the accuracy of this document. *See Duncan v. George Moser Leather Co.* (1980), Ind.App., 408 N.E.2d 1332, 1343. Further, this document, as well as the other material presented as forming the basis for Dr. Powers affidavit, have not been certified or authenticated in any way and may not be considered on a motion for summary judgment. *See* T.R. 56(E); *Interstate Auction Inc.,* 448 N.E.2d at 1101 and *McMahan,* 478 N.E.2d at 122 n. 4.

Dr. Powers also testified that Miller did not inform him of his acute health problems during Dr. Powers' only medical examination of Miller on May 19, 1987. Dr. Powers concedes in his affidavit that his personal knowledge of Millers' acute health problems is based on the History of Health Symptoms or Conditions checklist prepared by Miller after litigation had commenced, and upon which Dr. Powers merely recorded Miller's answers without personal knowledge of the symptoms. The checklist is not a proper basis for Dr. Powers' medical knowledge of Miller's acute health conditions. *See In re Agent Orange Product Liability Litigation* (E.D.N.Y. 1985), 611 F.Supp. 1223, 1246; *see also Briney v. Williams* (1968), 143 Ind.App. 691, 695, 242 N.E.2d 132, 134, *trans. denied.* A party cannot create a genuine issue of fact merely by presenting an expert witness who is willing to express an unsupported opinion that favors the party's position. *Porter v. Whitehall Laboratories* (S.D.Ind.1992), 791 F.Supp. 1335, 1347.

Dr. Powers' affidavit is offered solely for his opinion concerning the cause of Miller's acute health conditions. With regard to that issue, the affidavit is deficient because: (1) it is not made upon Dr. Powers' personal knowledge of Miller's symptoms but is based on the History of Health Symptoms or Conditions checklist prepared

---

**3.** Dr. Powers' affidavit opinion relies on the following matters for support: Dr. Powers' medical training; an abstract of Miller's deposition taken on April 8, 1991; the History of Health Symptoms or Conditions checklist; Dr. Powers' knowledge of the condemnation of Miller's cu-

mar-coated silo, the PCB contamination in Miller's cattle, and the flaking of the cumar coating into the silage; the Material Safety Data Sheet; and Dr. Powers' knowledge of the probable carcinogenic nature of PCB's.

by Miller, (2) it is based on supporting documents which have not been certified or authenticated, and (3) it contradicts Dr. Powers' prior deposition testimony without explanation for Dr. Powers' newly found expertise sufficient to rehabilitate his deposition testimony. Therefore, even assuming that Dr. Powers' affidavit were properly before us, it fails to meet the mandatory requirements of Trial Rule 56(E) and must be disregarded.

## CONCLUSION

By not designating evidence upon which he relies in opposing Monsanto's motion for summary judgment, Miller has not met the requirements of Trial Rule 56(C). However, Miller did submit the affidavit of Dr. Powers, and we have considered it in determining whether Miller has demonstrated a genuine issue of material fact in order to overcome Monsanto's motion for summary judgment. After reviewing Dr. Powers' affidavit, we conclude that it does not meet the requirements of Trial Rule 56(E) and must be disregarded as evidence in opposition to Monsanto's motion. Thus, Miller has not presented sufficient evidence to create a genuine issue of material fact. The trial court's order granting summary judgment for Monsanto is affirmed.

The order is affirmed.

BAKER, J., concurs.

ROBERTSON, J. concurs with separate opinion.

ROBERTSON, Judge, concurring.

I concur in the result reached by the majority because the record properly before this court contains no evidence causally linking Miller's many ailments with PCB exposure. I write because this case illustrates, perhaps as well as the many others I have reviewed recently, how "lethal" summary judgment has become. Monsanto Co. has artfully taken advantage of Ind.Trial Rule 56(C)'s designation requirement while Miller has absolutely failed to designate any portion of the record in opposition to the motion or to designate the genuine issues of material fact, even though Monsanto did not move for summary judgment until July 17, 1992, a year and one-half after the designation requirement became effective. Hence, aspects of the record which in the past would have been considered by the courts, and which show the true state of the evidence which would be submitted at a trial, have simply been excised. While this manner of adjudicating summary judgments may save the public the expense of a trial, it has not, in my view, simplified our review or furthered the search for the truth. And, the longer it takes the practicing bar to comprehend the significance of the amended trial rule, the greater is the likelihood that the judicial system will be brought into disrepute.

Among other things, plaintiff Miller alleged in his complaint that Monsanto negligently failed to warn him of the dangers associated with cumar, a substance containing polychlorinated biphenyls, a suspected carcinogen. Miller operated a dairy farm and fed his cattle silage stored in a silo, the interior of which had been coated with cumar. Miller alleges the use of the silo exposed him to the "PCB-containing cumar;" that his exposure was a proximate result of the negligent acts of Monsanto in failing to test the cumar for safety and in failing to warn him of the dangers of exposure; and that he has sustained injuries as a proximate result of Monsanto's negligent acts.

Under our trial rule, for purposes of summary judgment, the facts alleged in Miller's complaint are taken as true, except to the extent that they are negated by the evidentiary materials designated by Monsanto. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729, *trans. denied.* The burden is upon the moving party, Monsanto, to show in the manner required by the rule that there is no issue as to any material fact, and that it is entitled to a judgment as a matter of law. T.R. 56(C) ("[t]he judgment sought shall be rendered forthwith if the designated matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ...."). The 1991 amend-

ments to T.R. 56(C) did not alter the structural burdens for summary judgment, i.e. the movant's burden of showing no genuine, material, factual issue and entitlement to a judgment as a matter of law, or change the rule that a movant for summary judgment must support his motion by a prima facie showing. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 415–6; *Chester v. Indianapolis Newspapers, Inc.* (1990), Ind.App., 553 N.E.2d 137, *trans. denied.* Accordingly, the burden does not shift to Miller to do anything until these requirements have been met.

Monsanto moved for summary judgment on two grounds: (1) that Miller had no evidence his body had absorbed PCBs as a result of the alleged presence of PCBs in the coating of the silo on his farm; and (2) that Miller had no evidence that any symptom or injury had been caused by PCBs. In support of its motion, Monsanto offered and designated the affidavit of William J. Waddell, M.D., a professor and the chairman of the Department of Pharmacology and Toxicology at the School of Medicine, University of Louisville, who opined, to a reasonable degree of medical certainty, that the acute symptoms described by Mr. Miller in his deposition were a reaction to nitrogen oxide gases which naturally form from the corn silage in the silo, a process totally unrelated to the silo coating or to PCBs. Dr. Waddell also averred that he had studied the chemistry and physical behavior of PCBs with respect to potential pathways for entry into the body and opined, in short, that Mr. Miller could not have received a toxicologically significant dose of PCBs through inhalation or skin contact with the silo walls during his presence in the silo as described in his deposition.

Dr. Waddell does, however, acknowledge the possibility that Miller could have been exposed to a toxicologically significant dose by ingestion. Dr. Waddell then goes on to selectively refer to the testimony of Mr. Miller, that he did not ingest any of the milk produced by his cows, and to eliminate ingestion as a possible route of exposure. Were it not for the T.R. 56(C) designation requirement, the evidence which follows on the very same page as Mr. Miller's testimony that he did not consume any of his milk, that is, Mr. Miller's testimony that he did eat the meat of the cows in his dairy herd which no longer could produce milk, would have raised a genuine issue of material fact on the question of whether Miller had demonstrated that he had in fact been exposed in a toxicologically significant way to the PCBs in the cumar. Dr. Waddell's affidavit establishes that one potential pathway of exposure can be via the cows, who have eaten the silage contaminated with cumar flakes and passed the PCBs on through their milk. Miller's deposition testimony and deposition exhibits designated by Monsanto, had they been properly included in the record, establish that, in fact, the State Board of Health had sampled raw milk produced by Miller's cows and found levels on some occasions better than 2.5 ppm, enough to move the State Board of Health to act. Dr. Waddell's affidavit does not eliminate the possibility that PCBs can be stored in the animal's tissue as well as secreted in the milk, though that is Monsanto's burden as the movant.

Trial Rule 56(H) precludes this court from reversing on the basis of a genuine issue of material fact which has not been identified for the trial court by the nonmovant. Therefore, even if this court in reviewing the briefs and record would find a genuine issue of material fact, we may not reverse the judgment. A surprising number of the practicing bar are learning this lesson the hard way. I hope my admonition will save some other litigants from Mr. Miller's fate.