Emanuel C. BLAKE, Appellant–Plaintiff,

v.

CALUMET CONSTRUCTION CORPORATION, Appellee–Defendant.

No. 75A03–9402–CV–83.

Court of Appeals of Indiana, Third District.

April 13, 1995.

---

Joseph V. Simeri, Butler and Simeri, P.C., South Bend, for appellant.

Peter J. Agostino, Lynn E. Arnold, Edward N. Kalamaros & Associates, P.C., South Bend, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff Emanuel C. Blake appeals from the entry of summary judgment in favor of appellee-defendant Calumet Construction Corporation in an action for personal injury damages.

On November 3, 1989, Blake, an employee of Morrison, Inc., was injured at the I/N Tek Continuous Cold Mill Project (I/N Tek) construction site in New Carlisle, Indiana, when he fell into the loading dock ramp located outside the maintenance shop building in which he had been working. During a break, Blake exited the building and upon stepping away from the door, tripped and fell into the adjacent loading dock ramp. The loading dock ramp was constructed on a downward incline so that the bottom of the ramp was a number of feet below level grade. No guardrails were in place at the time of Blake's fall.

Morrison was one of the general contractors on the site which supplied laborers, including Blake, for cleanup. Morrison worked under the direction of the project manager and agent for I/N Tek, United Engineers and Constructors, Inc. (U.E. & C.). U.E. & C. was responsible for coordinating the work of the general contractors at the site.

Calumet Construction Corporation also contracted with U.E. & C. Calumet's work at the I/N Tek construction site was to be performed under three separate packages. The first package was the civil portion which included the construction of a loading dock equipped with a guardrail. At the time of Blake's fall in November of 1989, Calumet had completed its first contract package at the I/N Tek construction site and was nearing completion of its second package, which included mechanical work for non-core equipment installation.

On June 18, 1991, Blake filed this action against Calumet for the injuries he sustained as a result of the fall. Thereafter, Calumet filed its motion for summary judgment. On November 22, 1992, after considering the designated evidence, the trial court granted Calumet's motion. Blake now appeals the summary judgment.

■ The sole issue on review is whether the trial court erred in granting summary judgment in favor of Calumet by holding that Calumet owed no duty to Blake under his negligence claim. In reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38, 39, *trans. denied.*

■ This Court must liberally construe all designated evidentiary matter in favor of

**1252**

the non-moving party and resolve any doubt against the moving party. *Brockmeyer v. Fort Wayne Public Transp.* (1993), Ind.App., 614 N.E.2d 605, 606, *trans. denied.* Despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no conflict regarding facts dispositive of the litigation. *Day v. Bicknell Minerals, Inc.* (1985), Ind.App., 480 N.E.2d 567, 570. Summary judgment may be sustained on any theory supported by the designated evidentiary materials. Ind. Trial Rule 56(C).

Blake contends there is a general issue of material fact as to whether Calumet owed a duty to Blake to exercise reasonable care. Before a defendant can be held liable for negligence, it must first be shown that the defendant owes a duty to the plaintiff. *Wilson v. Haimbaugh* (1985), Ind.App., 482 N.E.2d 486, 487. Absent a duty, there can be no breach of duty and no negligence or liability based upon the breach. *Id.* The existence of a duty is generally a question of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. As a general rule, a contractor is not liable for negligent damages to third parties after the acceptance of the work by an owner. *Citizens Gas & Coke Util. v. Am. Econ. Ins.* (1985), Ind., 486 N.E.2d 998, 1000; *Snider v. Bob Heinlin Concrete Const. Co.* (1987), Ind.App., 506 N.E.2d 77, 81, *trans. denied.* However, an exception to this general rule exists when the work is left in a condition that is dangerously defective, inherently dangerous or imminently dangerous as such that it creates a risk of imminent personal injury. *Snider,* 506 N.E.2d at 81; *National Steel Erection v. Hinkle* (1989), Ind.App., 541 N.E.2d 288, 292.

In the present case, Calumet's work at the I/N Tek site was performed under three separate packages. The construction of the loading dock ramp was part of the first package and had been completed two months prior to Blake's injury. The designated evidence shows that Calumet's work in the maintenance shop/loading dock area had been billed out at 100% and had been accepted and paid for by I/N Tek. By November of 1989, Calumet had completed its work on the first package of the I/N Tek construction

project and had relinquished control of the area. Hence, Calumet no longer had any duty to third parties, including Blake, following I/N Tek's acceptance of the work. *See Snider,* 506 N.E.2d at 81 (independent contractor not liable to third party following acceptance of the work by the owner).

Blake's assertion that a question of fact exists as to the installation of a guardrail is not material to the resolution of Calumet's summary judgment motion. Even if Calumet had failed to install the guardrail, the condition would not have created a risk of imminent personal injury. Proof of mere negligence is insufficient to impose liability on an independent contractor for injuries to third parties after acceptance by the owner. The negligence must create a situation which is noxious, inherently or imminently dangerous, and likely to cause injury, or it must involve a known or fraudulently concealed defect. *Id.* at 82.

The loading dock area contained no hidden defects, and the conditions in the area were clearly visible and known to Blake. At his deposition, Blake stated that he had been around the loading dock area on numerous occasions prior to the accident. He further testified that he had seen a railing leaning against the wall of the maintenance shop building from which he exited. Although Blake had not exited the maintenance building from the door next to the loading dock ramp prior to the accident, he was well aware of the condition behind the building. Additionally, Blake stated that on his way out of the building he tripped over something. Thus, the absence of the guardrail did not, in and of itself, make the ramp area inherently or imminently dangerous.

Finally, Blake asserts that either by contract or conduct Calumet assumed a duty to exercise due care for the safety of others, including Blake. A duty for the safety of others may be imposed through assuming control or supervision of an area at a construction site or by contract. *Cf. Clyde E. Williams and Assoc. v. Boatman* (1978), 176 Ind.App. 430, 435–436, 375 N.E.2d 1138, 1141.

Calumet, as did all the contractors at the I/N Tek construction site, agreed to comply with I/N Tek's safety manual. This manual imposes upon each contractor a duty with respect to its own employees. Blake points to various provisions within I/N Tek's safety manual which he contends demonstrate Calumet's assumption of a duty to exercise reasonable care for Blake's safety. Blake's references to the various pages of I/N Tek's safety manual, when viewed in their proper context, do not support Blake's contention that Calumet's agreement to comply with the manual equaled an assumption of a duty. *Alexander v. City of Shelbyville* (1991), Ind. App., 575 N.E.2d 1058, 1060, *trans. denied* (when examining a contract this Court does not look at any provision in isolation but examines the contract as a whole). The general tenor of the safety manual is that each contractor's duties was to be assumed in connection with "his employees." Paragraph 8 of the safety manual, entitled "CONTRACTOR HEALTH AND SAFETY," specifically provides:

> "1. Each Contractor shall be directly responsible for initiating and maintaining a safety effort to prevent *his employees* from working under conditions which are unsafe, unhealthy or unsanitary. The Contractors' compliance with the Occupational Safety and Health Act as well as with Project Safety manual rules governing safe work practices is mandatory."

R. 278. 8(A)(1) (Emphasis added.). Further, section 2 of the safety manual clearly provides "[t]he overall administration and effectiveness of the Project Safety Program is vested with the Construction Manager," i.e., U.E. & C. Additionally, the OSHA safety regulations do not impose a duty because the regulations apply to an employer with regard to its employees or an entity in control of the work. Blake was not an employee of Calumet nor did Calumet maintain control of the area at the time when Blake was injured.

After completing work in the area and relinquishing control to the owner, Calumet did not assume any duty by contract or conduct to provide for the safety of all other workers who would later enter the area. *See Ramon v. Glenroy Constr. Co., Inc.* (1993), Ind.App., 609 N.E.2d 1123, 1130–1134, *trans. denied* (each contractor on a job site has a responsibility for providing for the safety of workers on the site during the performance of its portion of the contract and not at all times).

By agreeing to abide by the safety contract, Calumet did not assume by either contract or conduct a duty to a third party once Calumet relinquished control of the loading dock area. The summary judgment of the trial court is affirmed.

Affirmed.

RUCKER, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

The majority concludes that the absent guardrail did not make the ramp area inherently or imminently dangerous as a matter of law. Because Blake has alleged significant facts of imminent danger, this question is properly left for the jury. *See National Steel Erection v. Hinkle* (1989), Ind.App., 541 N.E.2d 288, 293 (question of imminent danger for jury).

Several Indiana cases have concluded, as a matter of law, that an instrumentality was not imminently dangerous. These cases, however, did not involve an absent safety device. *E.g. Hamilton v. Roger Sherman Architects* (1991), Ind.App., 565 N.E.2d 1136, 1139 (pass-under countertop); *Lynn v. Hart* (1991), Ind.App., 565 N.E.2d 1162, 1164 (slush-covered parking lot); *Snider v. Bob Heinlin Concrete Construction Co.* (1987), Ind.App., 506 N.E.2d 77, 82, *trans. denied* (swimming pool with faulty filtration).

An imminently dangerous instrumentality "is reasonably certain to place life or limb in peril." *Snider, supra* (quoting *Black's Law Dictionary* 921 (1968)). I cannot say as a matter of law that the absent guardrail was not reasonably certain to place I/N Tek's employees in peril. The guardrail was meant to protect I/N Tek's employees from precisely the danger that befell Blake.

In concluding that the area was not imminently dangerous as a matter of law, the Majority focuses on two factors: (1) Blake

tripped into the ramp area, and (2) he knew the rail was not installed. I find this unpersuasive. First, Blake's tripping in the area does not hurt his argument, rather, it supports a conclusion that a guardrail was necessary. Guardrails only aid those who are unsteady on their feet. Second, Blake's knowledge of the danger does not make the area less hazardous. An unguarded ledge is dangerous even to those who know it is there because people often trip through no fault of their own. This is not a case in which the "normal use of one's senses" would necessarily prevent injury. *Cf. Hamilton, supra* (plaintiff could have avoided injury by looking up before standing).

For these reasons, I would reverse the trial court's entry of summary judgment and remand for further proceedings.