**Michelle WEIDA, Donald Weida, and Colleen Weida, Appellants–Plaintiffs,**

**v.**

**Tom DOWDEN and Linda Dowden, Resort Park Investments, Inc., Country Club Managements, Inc., and Amy Keyser, Appellees–Defendants.**

No. 91A05–9504–CV–144.

Court of Appeals of Indiana.

April 15, 1996.

Edgar W. Bayliff, Bayliff, Harrigan, Cord & Maugans, P.C., Kokomo, John F. Goss, Boomershine & Goss, Monticello, Robert J. Guy, Monticello, for appellant.

Jay T. Hirschauer, Hirschauer & Hirschauer, Logansport, for appellees, Tom Dowden and Linda Dowden.

Joseph Stalmack, Stephen D. Bannwart, Joseph Stalmack & Associates, Hammond, for appellees, Resort Park Investments, Inc., Country Club Managements, Inc., and Amy Keyser.

**OPINION**

FRIEDLANDER, Judge.

Michelle Weida, Donald Weida and Colleen Weida [collectively referred to as the Weidas], appeal the trial court's grant of summary judgment entered in favor of Tom and Linda Dowden [collectively referred to as the Dowdens] and Resort Park Investments, Inc. (Resort Park), Country Club Management, Inc., White Oaks Country Club, Inc., (White Oaks), and Amy Keyser (Keyser) [collectively referred to as the defendants] which determined that the defendants were not liable for injuries Michelle sustained in an automobile accident when James Firth (Firth), Michelle's boyfriend, became intoxicated at a wedding reception and struck another vehicle while driving home.

We affirm.

The facts most favorable to the Weidas, the nonmoving party, are that the Dowdens were the parents of Phillip Dowden, who

married Renada Firth (Renada) on November 16, 1991. The wedding reception was held at White Oaks's clubhouse, located on Lake Freeman in Carroll County, Indiana. While Resort Park was responsible for managing the clubhouse, the liquor permit application was filed in the name of Country Club Management, Inc. Resort Park directed all of White Oaks's operations including those under the liquor permit. Keyser was the vice-president of Resort Park who followed various guidelines for wedding receptions held at White Oaks. Renada, the bride, was employed by White Oaks and Keyser, her supervisor, permitted the family to use the clubhouse facilities at no charge. No contract was signed by either party regarding the use of the clubhouse. While Renada's parents were responsible for organizing the reception, Linda Dowden paid for a deposit on a keg of beer for the reception at Phillip's request. The Dowdens did not invite any of the guests, or provide any of the decorations for the reception. Prior to the wedding, Phillip and a friend picked up the beer from a liquor store and delivered it to White Oaks. Keyser knew that the beer was being delivered to White Oaks for the guests' consumption.

During the reception, Michelle noticed eighteen-year-old Firth drinking beer from the unattended, self-serve keg. Firth was Renada's brother and had been dating Michelle for approximately two years. Michelle and several others, including Thomas Dowden, who was a police officer, testified that Firth did not appear intoxicated. At one point during the reception, Firth proceeded to drink an additional three to four beers in a forty-five minute period. Keyser testified that she did not observe any underage drinking at the reception.

Sometime during the reception, Firth and Michelle began arguing. The argument continued as they left the party together. Firth was driving Michelle home and during the trip, Firth crossed the center line of the road and struck an oncoming vehicle. Michelle was injured, and shortly after the collision, it was determined that Firth had a blood alcohol level of .12 percent. Firth pleaded guilty

to operating a motor vehicle while intoxicated resulting in serious bodily injury.[1]

On August 15, 1994, the Weidas filed an amended complaint against the defendants seeking damages for the injuries Michelle sustained as a result of the November 16, 1991 collision. The complaint alleged that the free, self-serve beer had been provided by the Dowdens and consumed on premises operated and controlled by White Oaks. They maintained that this negligent conduct of the defendants proximately caused Michelle's injuries.

The defendants filed summary judgment motions which the trial court initially denied on November 17, 1994 on the grounds that there was an issue of material fact as to "whether the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished." *Record* at 1142–45. The order provided in relevant part as follows:

### ORDER FOR NOVEMBER 17, 1994

On October 19, 1994, after hearing, the Court took under advisement the Motion for Summary Judgment filed January 5, 1994, by Defendants Resort Park Investments, Inc., White Oaks Country Club, Inc., White Oaks on the Lake, Country Club Management, Inc., and James Keyser and Amy Keyser, and the Motion for Summary Judgment filed on February 28, 1994, by Defendants Tom Dowden and Linda Dowden.

The Court, being duly advised, having considered the record of proceedings, and having considered the specifically designated pleadings and portions of the record, including filed and published depositions, now makes the following findings and enters Order herein:

1. The Court has jurisdiction over the parties and subject matter and the pending Summary Judgment Motions.

2. On a Summary Judgment, pursuant to Trial Rule 56, the Court makes its determination from the evidentiary matters

---

1. Ind.Code Ann. § 9–30–5–2 (West 1992); IC § 9–30–5–4 (West 1992).

designated to the Court. The burden is on the moving party to show there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. (See *Harvey, Ind. Practice,* Volume 3, TR 56, at page 627 and 1993 Supp. at page 95)[.] According to case law, all evidence must be resolved against the movant. Even if facts are not in dispute, Summary Judgment is inappropriate if conflicting inferences arise. *Pepkowski v. Life of Indiana Insurance Co.,* (1988), Ind.App., 526 N.E.2d 1015.

3. The factual allegations of this case, as set out in the amended complaint, and the legal theory of this case, as alleged in the amended complaint, involve a negligence action arising out of the consumption of alcohol by an eighteen year old person whose automobile [was] involved in an accident with injuries to his passenger. The Defendants are alleged to have provided alcohol to the eighteen year old automobile driver who had an auto accident upon leaving a wedding reception.

4. Pursuant to IC 7.1–5–10–15.5, Indiana Law contains a statutory authority for the liability of a person furnishing alcoholic beverages to an intoxicated person. This statute is interpreted in the leading Indiana case of *Thompson v. Ferdinand Sesquicentennial Com.,* 637 N.E.2d 178 (Ind.App. 1 Dist. 1994). Both the statute and the case apply directly on point to the amended complaint before the Court.

5. *Thompson, supra* at page 180, holds that a person who furnishes an alcoholic beverage to another is not liable for civil damages caused by the intoxication unless the recipient was visibly intoxicated and the intoxication was the proximate cause of the alleged damage.

6. This Court now determines that there is before the Court an issue of material fact as to whether the recipient of the alcohol, i.e. the driver, was visibly intoxicated and as to whether the intoxication of the recipient was the proximate cause of the alleged damage. Specifically, it is an issue for the trier of fact to determine whether the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and further, that the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the damage alleged in the complaint.

7. In *Thompson, supra* at page 179, the Court of Appeals upheld the Trial Court's Final Instruction Number 16 as a correct statement of the law and properly given based upon the evidence presented at trial. Instruction Number 16 was a restatement of IC 7.1–5–10–15.5.

8. Based upon the specifically designated portions of the record considered by the Trial Court on this Summary Judgment matter, the Court believes that even though it appears that the non-moving party is not likely to prevail at trial based upon the facts presently before the Court, the Court is not authorized to grant Summary Judgment. The Court finds there is a genuine issue as to a material fact and that neither of the respective sets of Defendants is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed January 5, 1994, by Defendants Resort Park Investments, Inc., White Oaks Country Club, Inc., White Oaks on the Lake[,] Country Club Management, Inc., and James Keyser and Amy Keyser is hereby denied, and the Motion for Summary Judgment filed on February 28, 1994, by Defendants Tom Dowden and Linda Dowden is hereby denied.

*Record* at 1142–45.

After the trial court entered this order, the parties filed the following stipulation with the trial court: "The parties stipulate that the person furnishing the alcoholic beverage to James K. Firth, Jr., on the occasion in question *did not have actual knowledge that James K. Firth, Jr., was visibly intoxicated at the time the alcoholic beverage was furnished." Record* at 1146 (emphasis supplied).

Once the above stipulation was submitted, the trial court entered an order on December

22, 1994, granting summary judgment in favor of the Dowdens and White Oaks:

### ORDER FOR DECEMBER 22, 1994

On December 19, 1994, Defendants, Tom Dowden and Linda Dowden, by counsel, Jay T. Hirschauer, filed Defendant Dowdens' Motion To Reconsider Court's Ruling of November 17, 1994, and Defendant Dowdens' Motion for Judgment On The Pleadings.

On December 21, 1994, Defendants, Resort Park Investments, Inc., White Oaks Country Club, Inc., White Oaks on the Lake Country Club Management, Inc., James Keyser and Amy Keyser, by counsel, Joseph Stalmack and Stephen D. Bannwart, filed Defendants' White Oaks Motion to Reconsider Court's Ruling of November 17, 1994.

On December 13, 1994, all parties by counsel, filed with the Court a Written Stipulation that "the person furnishing alcoholic beverages to James K. Firth, Jr. on the occasion in question, did not have actual knowledge that James K. Firth, Jr. was visibly intoxicated at the time the alcoholic beverage was furnished."

The Court, being duly advised, having reviewed the record of proceedings, having considered the Stipulation filed December 13, 1994, and having considered the Motion To Reconsider the Court's denial of Defendants' Summary Judgment on November 17, 1994, now finds that there is no genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law on the Plaintiffs' Amended Complaint.

IT IS THEREFORE ORDERED that upon the Motion To Reconsider filed by all Defendants, that the Defendants' Motion for Summary Judgment against the Plaintiffs should and shall be granted, and Summary Judgment is hereby entered in favor of all Defendants against the Plaintiffs on the Plaintiffs' Amended Complaint.

*Record* at 1159–60.

The Weidas appeal and raise several issues which we have consolidated as one:

Did the trial court properly grant summary judgment in favor of the defendants?

■ The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Hermann v. Yater,* 631 N.E.2d 511 (Ind.Ct.App.1994). When reviewing the grant of summary judgment, this court stands in the shoes of the trial court. *Blake v. Calumet Const. Co.,* 648 N.E.2d 1250 (Ind.Ct.App.1995). It must be determined whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897 (Ind.Ct.App.1992).

■ The party appealing from the grant of summary judgment has the burden of persuading the reviewing court that the entry of summary judgment was erroneous. *Hooks SuperX, Inc., v. McLaughlin,* 642 N.E.2d 514 (Ind.1994). Absent a genuine issue of material fact, this court will affirm a summary judgment based upon any legal theory supported by the record. *Dimitroff v. State Farm Mut. Auto Ins. Co.,* 647 N.E.2d 339 (Ind.Ct.App.1995). A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Graham v. Vasil Management Co., Inc.,* 618 N.E.2d 1349 (Ind.Ct.App.1993). A factual issue is "genuine" for purposes of summary judgment if the trier of fact is required to resolve an opposing party's different versions of underlying facts. *York v. Union Carbide Corp.,* 586 N.E.2d 861 (Ind.Ct.App.1992). If the evidence shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991).

### 1. Liability of Resort Park Investments, Country Club Management, and Amy Keyser

■ In Indiana, common law liability for negligence in the provision of alcoholic beverages is restricted to cases involving the breach of a statutory duty. *Thompson v. Ferdinand Sesquicentennial Comm., Inc.,* 637 N.E.2d 178 (Ind.Ct.App.1994); *Rauck v.*

*Hawn,* 564 N.E.2d 334 (Ind.Ct.App.1990). The following statutes identify the specific prohibited conduct regarding such liability:

It is a Class C misdemeanor for a person to recklessly sell, barter, exchange, provide, or furnish an alcoholic beverage to a minor.

Ind.Code Ann. § 7.1–5–7–8(a) (West Supp. 1995) [the furnishing statute].

It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated.

IC § 7.1–5–10–15(a) (West Supp.1995) [the intoxication statute].

(a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) The person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) The intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

IC § 7.1–5–10–15.5 (West Supp.1995) [the Dram Shop Act].

■■■ When construing a statute, our foremost duty is to determine and give effect to the true intent of the legislature. *Indiana Dep't of Human Serv. v. Firth,* 590 N.E.2d 154 (Ind.Ct.App.1992), *trans. denied.* It is necessary to view the statute within the context of the entire act, rather than in isolation. *Id.* When a statute is clear and unambiguous on its face, we may not interpret the statute. *Scheub v. Town of Schererville,* 617 N.E.2d 585 (Ind.Ct.App.1993). Words are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Department of*

*Pub. Welfare v. Couch,* 605 N.E.2d 165 (Ind. 1992). We will not construe statutes in a manner which leads to absurdity or hardship. *Superior Constr. Co. v. Carr,* 564 N.E.2d 281 (Ind.1990).

■■■ In *Thompson,* we had occasion to construe the above statutes. The issue presented was whether a proposed final instruction containing language that a plaintiff was required to show that the defendant had actual knowledge that her minor son was visibly intoxicated when he was served alcoholic beverages, was a correct statement of the law. The plaintiff filed a wrongful death action after her eighteen-year-old son, Shawn Leinenbach, was killed in a motorcycle accident. Prior to the incident, Leinenbach had attended a beer garden established for the Ferdinand Sesquicentennial celebration where he purchased and consumed alcohol. The plaintiff objected to a jury instruction which provided that she was bound to prove that the defendants, who sold her son the alcohol, had actual knowledge that he was visibly intoxicated at the time the beverage was furnished. The plaintiff argued that it was only necessary to show a violation of the furnishing statute, inasmuch as the provisions of the Dram Shop Act were inapplicable because Leinenbach was a minor. In rejecting this contention, this court observed as follows:

[The Dram Shop Act] provides that a person who furnishes an alcoholic beverage to another is not liable for civil damages caused by the intoxication unless the recipient was visibly intoxicated and the intoxication was the proximate cause of the alleged damage. As the statute is clear and unambiguous, we apply the plain and ordinary meaning to the words of the statute. Thompson's argument to the contrary notwithstanding, the statute on its face does not limit its application to sales to intoxicated adults; rather it applies to all civil actions against persons who furnish alcoholic beverages to "a person." I.C. § 7.1–5–10–15.5. *Because minors are persons, the statute excludes from liability those who furnish minors with alcohol unless the minor was visibly intoxicated at the time the alcohol was furnished.*

*Had the legislature chosen to expose to civil liability those who negligently provide alcohol to a minor without showing visible intoxication, it could have easily done so; however, the legislature did not.* *Id.* at 180 (emphasis supplied).

The Weidas argue that *Thompson* has been repudiated in light of proposed language to the Dram Shop Act, which effectively renders this statute inapplicable to minors.[2] As White Oaks points out, however, the proposed amendment never became law, inasmuch as the Governor vetoed it.[3]

While the Weidas advance several arguments in support of their theory that minors are excepted from the applicability of the Dram Shop Act, we adhere to the reasoning set forth in *Thompson.* This court reaffirmed the principles set forth in *Thompson* in *Estate of Cummings v. PPG Industries, Inc.,* 651 N.E.2d 305 (Ind.Ct.App.1995). In *Cummings,* various employees of the defendant-company organized a party for other staff members at a local tavern. PPG management approved of the party and contributed money to defray the cost. Duffy, a minor, was a PPG employee who attended the party. Although the tavern was responsible for asking for identification from its customers, Duffy evaded detection by the tavern employees, drank alcohol, and became intoxicated. A PPG supervisor unsuccessfully attempted to confiscate Duffy's car keys before Duffy left the party. The supervisor knew that Duffy was a minor and that he was intoxicated. After Duffy left, he collided with another automobile in which Cummings was a passenger. Cummings died and his estate commenced an action against PPG under the Dram Shop Act and under a common-law theory of negligence. PPG filed a motion for summary judgment which the trial court granted. In affirming summary judgment, this court determined "that [a] person … may not be held civilly liable under the Act for 'furnishing' an alcoholic beverage to a person, *including a minor,* unless the person who furnishes the alcohol had actual knowledge that the person served was visibly intoxicated." *Id.* at 308 (citing *Thompson, supra* ).

Because the Weidas and the defendants stipulated that the furnisher of the alcohol was not aware that Firth was intoxicated, the trial court correctly relied upon *Thompson* and its interpretation of the Dram Shop Act in entering summary judgment.

We also observe that liability does not extend to White Oaks upon the Weidas theory that it furnished the alcohol to Firth. In cases where it has been determined that a defendant furnished alcohol to another in violation of the Dram Shop Act, the supplier was the "active means" by and through which the liquor was placed in the custody and control of the intoxicated person. *See Cummings, supra,* at 308. The *Cummings* court observed that one who neither possesses nor controls the liquor itself, does not furnish an alcoholic beverage so as to impose civil liability for injuries to a third person under the Dram Shop Act.

The record before us shows that the beer Firth purportedly drank was not purchased

2. The proposed amendment added the following language to the Dram Shop Act which is quoted in its entirety, *supra,* on page ——:

> "However, subdivisions (1) and (2) do not apply to a person who furnishes an alcoholic beverage to a person who is less than twenty-one (21) years of age.
> (C) A person at least twenty-one (21) years of age who becomes voluntarily intoxicated may not assert a civil claim for any damages for personal injury or death against a person who furnished the intoxicating beverage that contributed to the person's intoxication."

Senate Enrolled Act No. 443, 1995 Indiana Acts.

3. "MESSAGE OF THE GOVERNOR

MAY 5, 1995

Mr. President and Members of the Senate:

> After consulting with the leadership of the General Assembly and the sponsors of this legislation, it is apparent that an inadvertant [sic] drafting error has occurred which would cause SEA 443 to do the opposite of what its sponsors intended. As drafted, SEA 443 would immunize from all liability a person who furnishes alcoholic beverages to those under the age of twenty one. The sponsors of SEA 443, however, intended for those who furnish alcoholic beverages to minors to be held accountable for the consequences of their actions. In light of its drafting errors, I am vetoing this bill and returning it to the Senate for further consideration.

> /s/ ——————
> Evan Bayh
> Governor, State of Indiana"

by White Oaks. The kegs were brought to the premises by Phillip Dowden (the groom) and another individual. White Oaks did not provide, furnish, dispense or serve beer from the kegs brought onto its premises. It was simply not the active means by and through which Firth obtained the beer. *See Cummings, supra.*

*Lather v. Berg,* 519 N.E.2d 755 (Ind.Ct. App.1988) further supports our conclusion that White Oaks was not responsible for furnishing the alcohol to Firth within the meaning of the Dram Shop Act. In that case, a state police officer was killed by an intoxicated minor involved in a high-speed chase. The defendant acted as a social host for a party attended by four seventeen-year-olds. The defendant's uncle purchased the liquor served at the party. At some point during the party, one of the youths became intoxicated and unruly. He was ordered to leave after one of the partygoers threw his car keys at him. Shortly after driving away, the intoxicated minor became involved in a chase with the plaintiff-police officer. The police vehicle crashed and the officer died. The officer's estate brought an action against the host on the grounds that he furnished alcohol to a minor in violation of the Dram Shop Act. The trial court granted summary judgment for the defendant-host upon the theory that the defendant did not furnish the alcohol because he was not the active means by and through the liquor placed in the custody and control of the intoxicated minor. In affirming the trial court's judgment, this court observed as follows:

> Indiana courts have determined that one can "furnish" alcoholic beverages to another person by purchasing beverages on the other person's behalf, ... by knowingly allowing the other person to take the beverages from one's possession, ... by selling the beverages to a third person with knowledge that he intends to furnish them to the other person, ... or by buying the other person a drink.... In each of these cases, one person supplied alcoholic beverages to the other for his or her use. Each supplier was *"the active means"* (emphasis supplied) by and through which the liquor [was] placed in the custody and control of persons whom the statute was enacted to

protect. *[Banks v. State,* 188 Ind. 353, 359, 123 N.E. 691, 693].

*Id.* at 761.

The *Lather* court concluded that the defendant-host only played a supporting role, did not actually supply the liquor, and was not the active means by and through which the liquor was placed in the custody and control of the intoxicated individual.

Like *Lather,* we observed in *Cummings* that, while the defendant-employer exercised authority over its employees when it terminated the party upon learning of the tragedy, the evidence failed to show that the company controlled the manner in which the minor obtained the alcohol. As in *Cummings,* no employees or agents of White Oaks served Firth beer from the kegs. While White Oaks had a bartender on duty at the bar, Firth never entered. The record is devoid of any evidence demonstrating that White Oaks furnished the beer to Firth.

The arguments advanced by the Weidas regarding White Oaks's Dram Shop liability are not persuasive, inasmuch as the statutes are clear and unambiguous. *Thompson, supra.* We therefore apply the plain and ordinary meaning to the language of the Dram Shop Act and conclude that White Oaks was not liable for Michelle's injuries.

■ We also reject the Weidas' contention that White Oaks is liable under a common law negligence theory. While the activity of the legislature in a given area generally leads to preemption, our supreme court has held otherwise. *See Gariup Const. Co. Inc. v. Foster,* 519 N.E.2d 1224 (Ind.1988); *see also Thompson, supra.* Thus, the Weidas may pursue a common law negligence claim despite the provisions of the Dram Shop Act.

■ To prevail in a negligence action, it must first be shown that the defendant owed a duty to the plaintiff. *Blake v. Calumet Const. Co.,* 648 N.E.2d 1250 (Ind.Ct.App. 1995). Recovery is permitted only when the plaintiff establishes that the defendant breached a duty owed to the plaintiff that was the proximate cause of the injuries. *State Street Duffy's, Inc. v. Loyd,* 623 N.E.2d 1099 (Ind.Ct.App.1993), *trans. denied.* Ab-

sent a duty, there can be no breach of duty, and no negligence or liability based upon an alleged breach will attach. *Webb, supra.* Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively reserved for the trial court. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514 (Ind.1994).

The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue of law within the province of the court. *Douglass v. Irvin,* 549 N.E.2d 368 (Ind.1990). The imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Webb, supra.* Three factors must be considered before a duty will be imposed: 1. The relationship between the parties; 2. the reasonable foreseeability of harm to the person injured; and, 3. public policy concerns. *Id.* As stated in *Webb,* "the duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Id.* at 997.

In defining any duty that White Oaks may have owed to the Weidas, *Baxter v. Galligher,* 604 N.E.2d 1245 (Ind.Ct.App. 1992), is instructive. In that case, the plaintiff sustained an eye injury during a party hosted by the defendants. Two of the guests became intoxicated when they drank alcohol furnished by the defendant. One of the guests threw a set of keys striking the plaintiff's eye. The undisputed evidence revealed that the defendant had no actual knowledge of any evidence of intoxication, and no evidence was presented showing that the party guests were visibly intoxicated. The plaintiff brought an action against the defendants for allegedly supplying the alcohol consumed by the guests. The trial court granted summary judgment in the defendant's favor pursuant to the Dram Shop Act. This court affirmed and observed as follows:

> As a general rule, a landowner may be liable for harm proximately caused by his failure to exercise reasonable care for the protection of his social guests. *[Burrell v.*

*Meads,* 569 N.E.2d 637 (Ind.1991) ]. However, our legislature has set forth a specific standard of liability applicable when a person (including a social guest) is furnished alcoholic beverages.

> The complaint and affidavits herein disclose no allegation that the Gallighers furnished an alcoholic beverage to Walker or Parrish with actual knowledge of the recipient's visible intoxication. Moreover, Baxter has not alleged that either Walker or Parrish was visibly intoxicated when engaging in the horseplay that ultimately caused Baxter's injury. There exists no material issue of fact, i.e., one which is dispositive of the litigation. Pursuant to I.C. 7.1–5–10–15.5(b), the Gallighers demonstrated their entitlement to judgment as a matter of law.

*Id.* at 1248.

The record before us reflects that Firth's mother specifically instructed him not to drink from the beer keg. There is no showing that White Oaks assumed responsibility of asking for identification from the wedding guests; nor did it assume the responsibility of dispensing and serving the beer from the kegs. The mere fact that the wedding reception was held at White Oaks did not impose a duty upon it to supervise the guests' alcohol consumption or otherwise control Firth's behavior.

The trial court properly granted White Oak's motion for summary judgment.

### 2. Liability of the Dowdens

The Weidas initially argue that the Dowdens are liable because they furnished the beer to Firth or encouraged, aided, or induced him to possess the alcohol.

The record contains no evidence that the Dowdens furnished alcohol to Firth under the Dram Shop Act provisions. They only gave their son (the bridegroom) money to make a deposit on the beer kegs. They neither delivered the alcohol nor dispensed it at the reception. While Tom Dowden testified that he would have stopped any underage drinking if noticed, no one ever asked him to supervise the beer kegs. In *Lather, supra,* this court observed as follows:

The statute forbids any person to "sell, barter, exchange, provide, or furnish *an alcoholic beverage* to a minor." IC 7.1–5–7–8 (emphasis supplied). It does not forbid any person to furnish *money* (emphasis in original) to a minor, even if the money is used to purchase alcoholic beverages. In the words of one court, "As an act cannot be regarded as negligence which one has a legal right to do, the furnishing of the money for the purchase of the whiskey would not be an action of negligence ... under the statute mentioned, because [the statute] does not penalize the act in question." *Henry Grady Hotel Co. v. Sturgis* (1943), 70 Ga.App. 379, 386, 28 S.E.2d 329, 333.

While we acknowledge that Bailey may have supplied a preliminary link in the chain of events leading to Murphy's ultimate intoxication, we have found no legal basis on which to conclude that he violated the statute. Furnishing money for alcohol is not furnishing alcohol. *Id.; see also Bennett [v. Letterly* (1977), 74 Cal.App.3d 901, 141 Cal.Rptr. 682] *supra.* Because Bailey had neither possession of nor control over the liquor itself, his conduct does not constitute furnishing alcohol to a minor in violation of IC 7.1–5–7–8.

*Id.* at 762–63.

In light of the above, and because the Dowdens only supplied the deposit money for the kegs, it is apparent that the Dowdens did not furnish the beer to Firth within the meaning of the statutes.

We also reject the Weidas' argument that the Dowdens are liable under IC § 7.1–5–8–6 and IC 7.1–5–10–3. These statutes provide as follow:

It is a Class C misdemeanor for a person to knowingly carry liquor into a restaurant or place of public entertainment for the purpose of consuming it, displaying it, or selling, furnishing, or giving it away to another person on the premises, or for the purpose of having it served to himself or another person, then and there. It is a Class C misdemeanor to knowingly consume liquor brought into a public establishment in violation of this section.

IC 7.1–5–8–6 (West 1982).

It is unlawful for a person who is not a permittee to recklessly give away or furnish, to a person other than a guest or a member of his family, or to recklessly sell, barter, or exchange, an alcoholic beverage unless he is expressly authorized to do so by this title.

IC 7.1–5–10–3 (West 1982).

Because we have determined that the Dowdens did not furnish the beer for the reception, IC 7.1–5–10–3 is inapplicable to the circumstances presented here. Although the Weidas rely upon IC 7.1–5–8–6 as a basis for imposing liability, the plain wording of this statute only subjects one who violates its provisions to criminal liability. As discussed above, *Thompson* pointed out that it is the provisions of the Dram Shop Act which "identify the specific conduct, proof of which will provide evidence of negligence," *see Thompson* at 180, in cases involving the provision of alcohol. Here, the parties stipulated that the person who furnished the alcohol to Firth had no actual knowledge that he was visibly intoxicated. There is simply no basis to impose liability upon the Dowdens for negligence in this case for alleged statutory violations. *Thompson, supra.*

We also reject the Weidas' argument that the Dowdens were liable under a common law theory of liability, inasmuch as the Weidas have failed to show that there was any type of "special relationship" between the parties so as to give rise to a duty that would subject the Dowdens to liability. While the Weidas essentially argue that the Dowdens are liable because they provided the monetary deposit for the beer kegs, such conduct does not constitute furnishing. The record is devoid of evidence showing that they had possession or control over the alcohol. *See Lather, supra.* They did not participate in the planning of the reception or the activities during the party, and we reject the Weidas' reliance on *Gariup, supra* as a basis for imposing common law liability upon the Dowdens. In writing for the majority, Justice Dickson observed as follows:

Indiana courts have traditionally recognized that the existence of a common law negligence action requires judicial determination of "a duty on the part of the defendant in relation to the plaintiff." *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706. "The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *(Neal v. Homebuilder's, Inc.* (1952), 232 Ind. 160, 169, 111 N.E.2d 280, 285 (citing *Union Traction Co. v. Berry* (1919), 188 Ind. 514, 520, 121 N.E. 655, 657)).

> .      .      .      .      .

Cognizant of our legislature's active and ongoing interest and participation in the development of public policy in this area,[3] this Court is unwilling to depart from the general rule followed in most jurisdictions, *and we hold that common law liquor liability shall not be extended to the purely social host, except in cases involving a breach of a statutory duty.*

[3.] *See* Ind. Code Section 7.1–5–7–8 (enacted in 1982, limited the civil liability of educational institutions for furnishing alcoholic beverages to minors); Ind. Code Section 7.1–5–10–15(b) (enacted in 1985, recognized reasonable belief of customer's intoxication as defense to civil action for refusal to serve alcoholic beverages); *and Ind. Code Section 7.1–5–10–15.5 (enacted in 1986, asserted elements of actual knowledge and visible intoxication as prerequisites to civil actions for furnishing liquor to intoxicated persons, effective as to actions accruing after March 31, 1986.)*

*Id.* at 1227–28 (emphasis supplied).

While the *Gariup* court permitted a common law theory of negligence to advance to the jury, the court limited its holding to the precise facts presented. Justice Dickson continued:

> In the present case, it is uncontroverted that Gariup conducted the party; it occurred on Gariup's premises; Gariup furnished the alcoholic beverages; Gariup's president was present during the party; the "Quarters" drinking game occurred; and significantly, the intoxicated person, Orner, was a Gariup employee. While there may be a factual question as to whether the party was within the scope of employment, it is readily apparent that Gariup, as Orner's employer, had significantly greater influence and control over Orner than Gariup would have had over a non-employee, social guest.

> *From the facts and circumstances unique to the present case,* we conclude that as between Gariup, Orner, and third-person motorists potentially exposed to significant danger in the event of Orner's drunk driving, there existed a relationship which as a matter of law gave rise to a duty on the part of Gariup to exercise ordinary and reasonable care. While incorrect in naming the social host/guest relationship as the source of such duty, the trial court was correct in recognizing the existence of duty and permitting the jury to determine whether Gariup exercised reasonable care in supervising the party and enabling Orner to participate in the drinking game and to become inebriated.

*Id.* at 1229 (emphasis supplied).

Unlike the circumstances presented above, the Dowdens were neither owners nor operators of the facility where the reception was conducted. They did not invite any of the guests, and there is no evidence showing that they agreed to supervise any activity at the reception. Firth had not been granted any privilege to drink beer at the reception merely because he was a wedding guest. The circumstances present in *Gariup* are strikingly different than those here, and we cannot say that the Dowdens even "supplied the preliminary link in the chain of events" which led to Firth's ultimate intoxication. *Cummings, supra,* at 311.

Under the particular facts most favorable to the Weidas, the nonmoving party, we conclude that no duty arose from the Dowdens to the Weidas to supervise the party or otherwise control Firth's behavior. It was simply not reasonably foreseeable to the Dowdens that their action in contributing money for the beer keg deposit would result in Firth becoming intoxicated and subsequently becoming involved in an automobile accident. Because the Dowdens did not furnish the beer, and since they did not have any common law duties that arose from maintaining or owning the premises at which

the party was held, there can be no common law action against them. *See id.* The trial court, therefore, properly granted the Dowdens' motion for summary judgment.

Judgment affirmed.

BAKER and GARRARD, JJ., concur.