**INDIANAPOLIS PODIATRY, P.C., Appellant–Plaintiff,**

v.

**Henry EFROYMSON, Michael Wukmer, and Ice, Miller, Donadio & Ryan, Appellees–Defendants.**

No. 49A04–9810–CV–517.

Court of Appeals of Indiana.

Nov. 29, 1999.

James A. Smith, Smith & Associates, Westfield, Indiana, Frank C. Capozza, Indianapolis, Indiana, Attorneys for Appellant.

William P. Wooden, Caroline L. Young, Wooden & McLaughlin, LLP, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

MATTINGLY, Judge

Indianapolis Podiatry, P.C. (Podiatry) appeals a grant of summary judgment in favor of Henry Efroymson, Michael Wukmer, and Ice, Miller, Donadio, and Ryan (Ice Miller). Podiatry raises three issues for our review, which we consolidate and restate as:

1. Whether the trial court properly granted summary judgment on Podiatry's legal malpractice claims that Ice Miller had a conflict of interest which impaired its representation of Podiatry; gave Podiatry negligent advice; and negligently drafted a settlement agreement on behalf of Podiatry; and

2. Whether the trial court abused its discretion in striking portions of certain affidavits on the ground they included improper legal conclusions and opinions as to the status of Indiana law.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

In August of 1994, Podiatry sought counsel from Ice Miller regarding the departure of Dr. Richard Lundeen, one of the three doctors who were principals and shareholders in Podiatry, from the group. Dr. Lundeen's employment contract with Podiatry included a covenant not to compete which prevented him from practicing podiatry within a defined territory for two years after leaving his employment with Podiatry.

Some of Dr. Lundeen's practice with Podiatry was conducted at a clinic located at Winona Hospital. The Winona clinic

---

1. Oral argument was held on October 21, 1999.

was operated under a contractual agreement between Podiatry and Winona. The contract provided that either party could, after giving thirty days notice, cancel the arrangement at any time and for any reason. After Dr. Lundeen left Podiatry, Winona notified Podiatry that it was canceling its contract with Podiatry and, as a result, Podiatry was to vacate the Winona clinic. Podiatry believed Dr. Lundeen planned to practice at Winona in violation of his covenant not to compete and contacted Ice Miller, as Ice Miller had represented Podiatry in the past with regard to similar restrictive covenant matters.

Ice Miller agreed to represent Podiatry and assigned to the matter several attorneys including Efroymson, for bankruptcy matters,[2] and Wukmer, for litigation. At an initial meeting between Podiatry and Ice Miller, Ice Miller did not disclose to Podiatry that it had represented Winona for some twelve years and had served as its general counsel; however, it did disclose to Podiatry about a week later its representation of Winona and indicated to Podiatry that it could not participate in any action against Winona.

Ice Miller represented Podiatry in Dr. Lundeen's bankruptcy petition and it negotiated and prepared a settlement agreement between Dr. Lundeen and Podiatry. The agreement resolved issues including the effect of Dr. Lundeen's covenant not to compete, preserved claims Podiatry had against third parties, and preserved for Podiatry a claim in the bankruptcy action for damages resulting from Dr. Lundeen's breach of his employment contract with Podiatry. The settlement also allowed Dr. Lundeen to practice at Winona.

After the bankruptcy court approved the settlement agreement with some changes, Podiatry became dissatisfied with Ice Miller's representation. It discharged Ice Miller on November 8, 1994, and hired James Knauer as its counsel. Knauer

sought to have Podiatry excused from the settlement agreement but the bankruptcy court denied his motion. He also brought an action on behalf of Podiatry against Winona. That action is still pending.

On August 30, 1996, Podiatry brought an action for legal malpractice against Ice Miller, Efroymson, and Wukmer. Ice Miller moved for summary judgment and Podiatry included as designated evidence in its response affidavits from Knauer and Henry Karlson, a professor at the Indiana University School of Law—Indianapolis. Ice Miller moved to strike parts of the affidavits. The trial court granted that motion and granted summary judgment to Ice Miller.

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.,* 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986). On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.,* 651 N.E.2d 810, 813 (Ind.Ct.App.1995). A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of

2. In early August of 1994 Dr. Lundeen told Podiatry he was going to file for bankruptcy and ask the bankruptcy court to nullify his employment contract with Podiatry and discharge his obligations to Podiatry. He filed for bankruptcy on August 11.

action. *Weida v. Dowden,* 664 N.E.2d 742, 747 (Ind.Ct.App.1996). A factual issue is "genuine" if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Id.*

## THE SUMMARY JUDGMENT

Podiatry asserts that summary judgment was error for three reasons: (1) Ice Miller's representation of Podiatry involved a conflict of interest because of Ice Miller's relationship with Winona; (2) Ice Miller improperly advised Podiatry regarding the effect of the settlement agreement between Dr. Lundeen and Podiatry; and (3) Podiatry was damaged by Ice Miller's actions.

### 1. *Conflict of Interest*

Podiatry first asserts "the material facts concerning the scope of [Ice Miller's] representation [of Podiatry] are in dispute," (Br. of Appellant at 28), by virtue of a conflict of interest arising from Ice Miller's relationship with Winona and Ice Miller's alleged failure to fully disclose the conflict. Podiatry argues that "[t]o Podiatry, Ice Miller's authority and scope of representation was [sic] unlimited." *Id.* It bases its argument upon the following exchange testified to by Dr. Elliot Kleinman, a principal in Podiatry:

A. [An Ice Miller attorney] stated to Dr. Miller and I[sic], approximately halfway through that meeting, that he needed to inform us that their firm also represented Winona Hospital and that it was his obligation to inform us.

Q. Okay. Anything else said on that subject?

A. Nope.

(R. at 742.) Podiatry characterizes this exchange as testimony by Dr. Kleinman "that there were no further disclosures." (Br. of Appellant at 27.)

However, we note that in the same deposition Dr. Kleinman acknowledged that Ice Miller would not be representing Podiatry in any action against Winona: "So I think common sense would have been said if there was an action against Winona, yeah, that Ice, Miller would not be representing us." (R. at 131.) Dr. Anthony Miller, another of Podiatry's principals, testified to the same effect: "Ice Miller made it known to us that they represented Winona Hospital. That if any claims or any action were to be taken that they would not be able to participate in that." *Id.* at 66. Based on this testimony by Doctors Miller and Kleinman,[3] we cannot say the trial court erred to the extent it found there was no issue of fact with regard to the scope of Ice Miller's representation of Winona.

■ Because the scope of Ice Miller's representation of Podiatry could not have been understood by the parties to be "unlimited," and instead was expressly limited, there was no direct conflict of interest. An attorney is not obliged to accept all aspects of a tendered employment, *see* Ind. Professional Conduct Rule 1.2(c) (a lawyer may limit the objectives of the representation if the client consents after consultation), and here, Ice Miller asserts, it accepted only a limited employment—that is, one not involving any matters related to Winona. It thus argues "[Podiatry's] expectation [of representation with an unlimited scope] cannot be unilaterally imposed." (Br. of Appellees at 15.)

■ Ice Miller concedes that a lawyer must fully inform the client of the nature and extent of his other representations where there is a conflict of interest, but asserts such disclosure is not required where the contract between attorney and client is limited such that the attorney is not being asked to assert a claim against

---

3. In his deposition, Wukmer testified that he told Doctors Miller and Kleinman that Podiatry "may have claims against Winona Hospital, but we [Ice Miller] would not represent [Podiatry] on any such claims." (R. at 491.)

another client.[4]  In this context of a limited engagement, Ice Miller contends that Podiatry had sufficient information to decide whether to proceed with Ice Miller. While we disagree with Ice Miller's suggestion that full disclosure is not required and believe Ice Miller's consultation with Podiatry on this matter was at best only minimally adequate, we cannot say the trial court erred to the extent it found Ice Miller had no conflict of interest.

### 2. Negligence in Ice Miller's Advice to Podiatry

■ Podiatry next asserts there is an issue of material fact regarding whether Ice Miller was negligent in its representation of Podiatry based on the effect of the settlement agreement Ice Miller negotiat-

ed on Podiatry's behalf.[5]  It is not apparent from Podiatry's brief why Ice Miller's representation with regard to the agreement was negligent.  Podiatry asserts that it entered into the settlement on Ice Miller's advice that Podiatry's position was weak, even though Ice Miller knew Podiatry was dissatisfied with the agreement. However, Podiatry offers no argument to the effect that the strength of its position was anything other than what Ice Miller represented it to be.  Rather, it asserts "Clearly, Ice Miller's advice was wrong (1) because Indiana law favors the enforcement of settlement agreements, signed or not,[6] and because the Bankruptcy Court ordered the enforcement of the agreement."  (Br. of Appellant at 33) (footnote added).

4.  We are concerned by Ice Miller's characterization of Prof. Cond. R. 1.2(c) and we specifically reject Ice Miller's suggestion that an agreement to limit the scope of an attorney's representation may be formed without full disclosure to the client or with less disclosure than that which is required when the attorney has a conflict of interest.  Ice Miller characterizes Rule 1.2(c) as "allow[ing] an attorney to limit the objectives of a representation." (Br. of Appellees at 16.)  In fact, the rule states "A lawyer may limit the objectives of the representation *if the client consents after consultation*" (emphasis supplied).

The relationship between a client and his or her lawyer is contractual in nature and rests on mutual assent as to both its existence and its scope.  Thus, an attorney and client may agree that the lawyer will handle only certain types of claims and not others.  *ABA/BNA Lawyer's Manual on Professional Conduct* § 31:306 (1989).  But such agreements may not materially impair the client's rights.  *Id.* Rule 1.2(c) requires consultation with the client so that the client will understand the risks inherent in contracting for limited legal services: "The chief risk is that purchasing a cheap solution may result in a poor solution that will have to be undone later at greater cost."  Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 1.2:401 (2d. ed. Supp.1996).
Our appellate courts have not explicitly addressed the nature of the consultation required before an attorney may limit the scope of his or her representation.  However, in *In re Maternowski*, 674 N.E.2d 1287, 1291 (Ind. 1996) our supreme court indicated that the extent of disclosure to a client required when

the scope of representation is being limited is similar, if not identical, to that required in the context of a conflict of interest: "we note that even under Prof. Cond. R. 1.2(c), meaningful consent to a limitation on the lawyer's scope of representation must be based on full, objective disclosure and unbiased advice."
The designated facts reveal that any "consultation" between Ice Miller and Podiatry on this matter was at best only minimal and that little, if any "unbiased advice" was offered to Podiatry regarding the various ways in which Ice Miller's limited representation might limit or otherwise adversely impact Podiatry's possible recourse against Winona.
We further note with disapproval that the nature and extent of Ice Miller's asserted "limited engagement" were not memorialized in writing.

5.  Podiatry also asserts Ice Miller failed to adequately preserve Podiatry's claims against Winona, Ice Miller's long-time client.  This assertion, however, is premised on the fact that the settlement agreement allowed Dr. Lundeen to continue working at Winona.  It should be noted that Podiatry's new counsel did subsequently bring an action against Winona, and that portion of Winona's motion for summary judgment which was premised upon the settlement agreement was denied.  Because Podiatry's action against Winona is going forward, we need not address Podiatry's assertion that its claim was not preserved.

6.  Dr. Kleinman testified that an Ice Miller lawyer told him that "as long as we do not sign the document we can get out of it." (R. at 747.)

Ice Miller argues its advice to Podiatry was sound. It notes that under the Bankruptcy Code, Dr. Lundeen could reject the employment agreement and the covenant not to compete included therein.[7] The settlement agreement preserved Podiatry's right to pursue a claim against Dr. Lundeen in bankruptcy court, which claim Podiatry did pursue. Furthermore, nothing in the settlement agreement would bar or impair a claim by Podiatry against Winona for tortious interference with the Lundeen contract, and in fact such a claim is going forward. No language in the agreement purports to release Winona and the agreement expressly preserves all potential claims involving parties other than Podiatry and Dr. Lundeen. We cannot say the trial court erred to the extent it determined Ice Miller was not negligent in its representation of Podiatry.

### 3. Damages Arising from Ice Miller's Representation

Podiatry asserts it lost its claim against Dr. Lundeen for his violation of the covenant not to compete because the settlement Ice Miller negotiated failed to accomplish what Podiatry characterizes as "the intent of preserving a viable claim against Lundeen for breach of the restrictive covenant," [8] (Br. of Appellant at 34); it asserts

its case against Winona is "severely weakened" because of the agreement, *id.* at 33; and it characterizes as damages, without explanation, the money it had to spend to hire Knauer after it discharged Ice Miller. Ice Miller argues that summary judgment for Ice Miller was proper because the designated evidence does not indicate that Podiatry was damaged as a result of Ice Miller's representation. We agree.

◼ Summary judgment for the attorney is appropriate in a legal malpractice case where the plaintiff is not damaged by an attorney's handling of his case. *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind.1991). Here, the designated evidence does not demonstrate that Podiatry sustained damages as a result of Ice Miller's representation. The bankruptcy court was entitled to reject the Lundeen—Podiatry employment contract; the claims against Winona are, in fact, being pursued, and the substitution of Knauer as counsel for Podiatry did not involve any duplication of attorney fees. Ice Miller was paid only for the services it performed and Knauer is presumably being paid only for the services he is performing.

◼ We note initially that the bankruptcy court ruled[9] that no damages had

---

**7.** The Lundeen—Podiatry employment contract provided for liquidated damages as the sole remedy in the event of a violation of Dr. Lundeen's covenant not to compete. Ice Miller cites *In re Udell*, 18 F.3d 403 (7th Cir. 1994) as support for its argument that this liquidated damages provision was a claim dischargeable in bankruptcy. In *Udell*, the court distinguished a liquidated damages provision, which was a claim dischargeable in bankruptcy, from a right to equitable relief not giving rise to a right to payment, which right to relief would not be a dischargeable claim.

**8.** Podiatry asserts, citing to a stricken portion of the Knauer affidavit, that Podiatry might have been able to prevent Dr. Lundeen from "taking his patients and going to work for Winona," (Br. of Appellant at 34), had Ice Miller pursued a claim against Winona.

**9.** This aspect of the question of damages would thus normally be barred by the doc-

trine of issue preclusion. Ice Miller acknowledges that subsequent to the grant of summary judgment being appealed here, Podiatry and Dr. Lundeen entered into an agreed order in the bankruptcy court which purports to expunge parts of the bankruptcy judgment concerning claims against Dr. Lundeen by Podiatry. We agree with Ice Miller that the order does not have that effect; thus, the bankruptcy court's finding that Podiatry suffered no damages from the breach of the Lundeen—Podiatry contract bars relitigation of the factual issues asserted by Podiatry.

In *In re Memorial Hosp. of Iowa County, Inc.*, 862 F.2d 1299 (7th Cir.1988), a bankruptcy court held an intermediary in contempt and the district court affirmed. The intermediary filed a notice of appeal, but the parties then entered into a settlement which the bankruptcy court approved. As part of the settlement, the parties sought to have the district court's decision vacated. The Seventh Circuit refused, noting that "an opinion

been sustained by Podiatry as a result of the breach of the contract between Dr. Lundeen and Podiatry. When Dr. Lundeen practiced with Podiatry, he was paid in the form of the net proceeds from the offices he operated. So, after Dr. Lundeen left, Podiatry's net income would not have changed.

Furthermore, it does not appear that any claims against Winona were lost or impaired by virtue of Ice Miller's representation. As indicated above, Podiatry has in fact brought an action against Winona, and since the entry of the summary judgment being appealed in this case Winona's motion for summary judgment has been in most respects denied and the suit is proceeding. We cannot say the trial court erred to the extent it determined Podiatry had not been damaged by Ice Miller's representation.

## THE KARLSON AND KNAUER AFFIDAVITS

A trial court's decision to admit or exclude expert [10] testimony is entrusted to the discretion of the trial court, and we will reverse only when the admission or exclusion is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Faulkner v. Markkay of Ind., Inc.*, 663 N.E.2d 798, 800 (Ind.Ct.App.1996). Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.*

The trial court granted Ice Miller's motion to strike parts of the affidavits of Karlson and Knauer which Podiatry submitted, on grounds that "[l]egal conclusions, opinions, as to Indiana law are not admissible and invade the province of this court. Opinions by attorneys as to the status of Indiana law are likewise inadmissible. Any violations of the Rules of Professional Conduct are not within the purview of this Court; nor can such, alleged violations be the basis of civil liability." (R. at 892.)

Podiatry argues the stricken portions of the affidavits do not contain inadmissible legal conclusions but instead provide evidence of the appropriate standard of care [11] and of its violation by Ice Miller. Podiatry further argues that the court should have considered the effect of the professional rules, not as a basis for civil liability but as evidence as to the appropriate standard of care in a legal malpractice action.

Experts are generally not permitted to testify as to legal conclusions, *see* Ind. Evidence Rule 704(b) ("Witnesses may not testify to ... legal conclusions."); *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind.Ct. App.1991). In *Hacker*, we stated that to prove legal malpractice, expert testimony is normally required to demonstrate the standard of care by which an attorney's conduct is measured. However, we noted that even in that context it is inappropriate for a court to entertain evidence concerning a witness's interpretation of the law. 570 N.E.2d at 953. *See also McMahan v. Snap On Tool Corp.*, 478 N.E.2d 116, 122 (Ind.Ct.App.1985) (statement in an affidavit in support of a motion for summary

is a public act of the government, which may not be expunged by private agreement." *Id.* at 1300. It suggested the original judgment would continue to have preclusive effect even after a settlement agreement which made the judgment moot, stating "If parties want to avoid stare decisis and preclusive effects, they need only settle before the district court renders a decision." *Id.* at 1302.

10. Both Ice Miller and Podiatry address on appeal the question whether Karlson and Knauer were properly qualified as experts.

However, the trial court's decision addresses only the nature and content of the statements in the affidavits and does not question or otherwise mention the expert status of the affiants.

11. Podiatry argues that most of the statements in the Knauer affidavit should be characterized as statements of fact, rather than conclusions of law, and does not explicitly argue that Knauer's statements of his legal opinion relate to the standard of care question.

judgment that is no more than an opinion or a conclusion of law is not sufficient to establish the facts necessary to show that no genuine factual issue exists).

■ For the most part, the stricken affidavits merely recite legal conclusions, the opinions of the affiants on matters unrelated to the standard of care, and, in the case of the Knauer affidavit, the advice he gave to Podiatry and the legal conclusions explaining that advice. Paragraphs 14 and 15 of the Karlson affidavit do address the appropriate standard of care; however, they fail to articulate what the appropriate standard of care is and instead only state an opinion that it was not met. See, for example, paragraph 14 of the Karlson affidavit:

> Due to the conflicts of interest that existed, Ice, if it entered into an agreement with Lundeen on behalf of Podiatry, consistent with the standard of care of attorneys in Indiana, was required to inform Podiatry of the possible effect upon future litigation against Winona (if any) that would arise from the settlement. If Ice was unable or incapable of providing this information to Podiatry, Ice was required to inform Podiatry that Podiatry must seek and obtain independent counsel to evaluate the proposed settlement before approving the agreement.

(R. at 792.)

We have characterized similar statements as legal conclusions. In *McMahan,* for example, we determined that statements that "plaintiff's cause of action accrued on July 21, 1972" and "this action was not commenced within six years after the action accrued, and is barred [by the statute of limitations]" were legal conclusions which did not establish the absence of a factual issue. 478 N.E.2d at 122. In *Sanchez v. Hamara,* 534 N.E.2d 756, 759 (Ind.Ct.App.1989), we held that the trial court properly struck as a legal conclusion the statement in an affidavit that "on March 28, 1985, I . . . was doing nothing in the course and scope of my employment at

the time Barbara Hamara slammed the door of the van on my hand."

The trial court's determination that the portions of the Karlson and Knauer affidavits at issue contained inadmissible legal conclusions and opinions as to Indiana law was not clearly erroneous. As a result, the trial court did not abuse its discretion in striking the challenged portions of the affidavits.

## CONCLUSION

The trial court did not err in striking certain portions of the Karlson and Knauer affidavits offered by Podiatry and in granting summary judgment for Ice Miller. Its decision is affirmed.

Affirmed.

SHARPNACK, C.J., and BAKER, J., concur.